HAMLIN, Justice.
 

 By bill of indictment filed September 15, 1967, Lee Perry Pratt was jointly charged with Claude Alexander with the crime of aggravated rape upon a young woman on September 4, 1967 — the record reveals that the victim was sixteen years of age at the time the alleged crime was committed. LSA-R.S. 14:42. A severance was granted on November 10, 1967, after the hearing of preliminary motions.
 
 [1]
 
 Defendant was tried by jury, found guilty without capital punishment, and sentenced to a term at hard labor in the Louisiana State Penitentiary for the remainder of his natural life. He
 
 *924
 
 appeals to this Court from his conviction and sentence, presenting for our consideration twelve bills of exceptions.
 
 [2]
 

 BILL 'OF EXCEPTION'S NO. 1.
 

 Bill of Exceptions No. 1 was reserved when the trial judge denied defense counsel’s request for additional information in answer to an application for a bill of particulars.
 

 In application for a bill of particulars, defendant requested the following information :
 

 “-31-
 

 “Is it the contention of the State, that the accused committed aggravated rape of the victim because she resisted to the utmost but her resistance was overcome by force or that she was prevented from resisting by threats of great and immediate bodily harm accompanied by apparent power of execution or both?
 

 “-32-
 

 “If it is a contention of the State that the victim resisted the act to the utmost, but her resistance was overcome by force, state of what- acts her resistance consisted and by what force said resistance was overcome. If it is a contention of the State that she was prevented from resisting by threats of great and immediate bodily harm accompanied by apparent power of execution state what the threats of great and immediate bodily harm were and by what apparent power of execution they were accompanied?”
 

 The State answered the above questions as follows:
 

 “(7, 31, 32) Between midnight and 2 o’clock a. m. on September 4, 1967 * * * [victim’s male companion] and * * * [victim] were walking around in Girard Park located in the City of Lafayette, Louisiana when they were accosted by Claude Alexander and Perry Lee Pratt the accused in the above entitled and numbered cause. Both Claude Alexander and Perry Lee Pratt had sexual intercourse with * * * [victim] a female person, without her lawful consent. The state will show that * * * [victim] resisted the act to the utmost and her resistance was overcome by force
 
 and/or
 
 that she was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by the apparent power of execution. The threats consisted of threats of great and immediate bodily harm and threats of death by shooting.” (Emphasis ours.)
 

 Counsel for the defendant contended that the answer was insufficient. Citing Article
 
 *926
 
 480 of the Louisiana Code of Criminal Procedure and the Official Revision Comr ment thereunder, particularly sub-section (d), the trial court ruled that the District Attorney had sufficiently answered the inquiries requested.
 

 Counsel for the defendant contends in this Court that disjunctive crimes must be charged in the conjunctive for the reason that a defendant in a criminal prosecution is entitled to know what accusation is relied upon by the prosecution, and if the offense is charged disjunctively or alternatively, the precise accusation against the defendant is left uncertain. Counsel further contends that prejudicial error was committed by the refusal of the trial court -to order the State to specify in what manner the defendant was alleged to have com.mitted the crime of which he was accused in order that he might know what accusation was relied upon by the prosecution. He argues that disjunctive or alternative charges are not authorized by Official Revision. Comment (c) under Article 480 of the Code of Criminal Procedure.
 

 : Article 480 of the Code of Criminal Procedure recites:
 

 “If an offense may be committed by doing one or more of several acts, or by one or more of several means, or with one or more of several intents, -or with one or more of several results, two or more of such acts, means, intents, or results may 'be charged conjunctively in a single count of an indictment, or set forth conjunctively in a bill of particulars, and proof of any one of the acts, means, intents, or results so charged or set forth will support a conviction.”
 
 [3]
 

 We find that the phrase “and/or” in the above answer to the bill of particulars did not prevent the defendant from .knowing what accusation against him was relied upon by the prosecution. A reading of. the answer discloses that it plainly alleges that the victim resisted the rape to her- utmost, her resistance being overcome
 
 *928
 
 by force,
 
 and
 
 she was,
 
 or
 
 she was, prevented from resisting the rape by threats of great and immediate bodily harm. It further alleges that the act was accompanied by the apparent power of execution. In other words, it is alleged in effect that the rape was committed under force and threats which were beyond the power of the victim to successfully resist. We find no limitation in the answer which would have prevented counsel’s preparation of defendant’s defense. We do not find a violation of the conjunctive rule; the use of the word “or” under the allegations of the answer to the bill of particulars was superfluous.
 

 The case of City of Shreveport v. Bryson, 212 La. 534, 33 So.2d 60, discussed in the Official Revision Comment (c) to Article 480 of the Code of Criminal Procedure, is not apposite. Therein, this Court held that a defendant was improperly charged when the affidavit filed against her alleged that she was driving under the influence of. intoxicating liquor or drugs; disjunctive or alternative pleading was not permitted. It is understandable that drugs and liquor are two different substances, and that in order for an accused to adequately prepare her defense, she must know which of the substances allegedly influenced her.
 

 It is well settled that the ruling of the trial judge denying an accused data sought in a motion for a bill of particulars will not be disturbed in the absence of a clear showing that the judge abused his discretion to the prejudice of the accused. State v. Andrus, 250 La. 765, 199 So.2d 867, 876. See, State v. Wright, 254 La. 521, 225 So.2d 201; Article 484, Louisiana Code of Criminal Procedure.
 

 We find no abuse of discretion by the trial judge herein.
 

 Bill of Exceptions No. 1 is without merit.
 

 BILL OF EXCEPTIONS NO. 2.
 

 Bill of Exceptions No. 2 was reserved when the trial court overruled defendant’s motion to quash the indictment filed against him for the following reasons:
 

 1. The Jury Commission which selected the Grand Jury list and venire excluded women and members of the Negro race.
 

 2. The Grand Jury list and Venire from which the Grand Jury was empaneled and the Grand Jury which found the indictment excluded women.
 

 3. Citizens of the Negro race were included in the Grand Jury list and Grand Jury venire in such small numbers as to constitute only a token, having no relationship to the number of citizens of the Negro race as compared to the number of citizens of the Caucasian race in the general population in the Parish of Lafayette
 
 *930
 
 and in the Fifteenth Judicial District of the State of Louisiana.
 

 4. The indictment filed against Lee Perry Pratt is invalid and illegal and should be quashed because it was returned by a Grand Jury empaneled from a Grand Jury venire made up contrary to the provisions of the Fifth, Sixth, Fourteenth, and Fifteenth Amendments to the Constitution of the United States.
 

 Counsel for the defendant urges herein that Bill of Exceptions No. 2 contains three propositions, each of which is sufficient to quash the indictment: (1) There were no Negroes on the Jury Commission which selected the Grand Jury which indicted the defendant; (2) There were no Negroes on the Grand Jury which indicted the defendant; and (3) There were no women on the Jury Commission, Grand Jury, or Petit Jury.
 

 Oliver J. LeBlanc, Clerk of Court, Lafayette Parish, Lafayette, Louisiana, testified that Members of the Jury Commission herein were of the Caucasian race; that there had never been any Negroes on the Commission. This Commission of five members, including the Clerk of Court, is appointed by the district judge, who makes his own selection or secures recommendations from the Clerk of Court. Mr. LeBlanc stated that he had never made any recommendations to the judge, and that he did not know whether the names of any Negroes had been submitted to the judge for appointment.
 

 Despite the fact that the Jury Commission included no Negroes in its composition, the evidence discloses no prejudicial exclusion. Under the circumstances, we find that the following from State v. Barksdale, 247 La. 198, 170 So.2d 374 (Cert. denied), 382 U.S. 921, 86 S.Ct, 297, 15 L.Ed.2d 236, is controlling:
 

 “Another complaint is that no Negro has ever served as Jury Commissioner or as Foreman of the Grand Jury in Orleans Parish. These are appointive offices filled by the governor and judges, respectively, based upon their evaluation of the qualification of the individual appointee. The absence of Negroes in those offices at this time is not evidence of systematic discrimination against Negroes in the selection of juries.” See, State v. Marks, 252 La. 277, 211 So.2d 261.
 

 The testimony attached to the instant bill discloses that the jury venire herein was selected from a cross-section of the Parish' of Lafayette, and that names placed in the venire were chosen from various lists, such as the Telephone Directory, the City Directory, and the voting list of the Registrar of Voters. No conscious effort was made to include or exclude members of any race. Questionnaires were sent to prospective
 
 *932
 
 jurors under a system of selecting one out of eight names.- Answers included a-designation of race, but the testimony .affirms that race was not considered when names gathered from the questionnaires were placed in the jury venire box. Pertin-' ■ént testimony of Mr. LeBlanc is as follows:
 

 “Q. Was any conscious effort made to include members of the Negro race?
 

 “A. We do not make selection from race. We just go to the questionnaires or by recommendations, one way or the other.
 

 “Q. Now you said that list was put in the venire box. What list?
 

 “A. The slips or list that are put in the general venire box are made from questionnaires that I mailed out.
 

 “Q. Questionnaires?
 

 "A. Yes.
 

 “Q. That -are mailed out to whom ?
 

 “A.
 
 To different people in the Parish.
 

 “Q. And these questionnaires ask "them • to recommend — ■
 

 “A. No, no, to fill, in questionnaires to get their qualifications and occupations to see if they are qualified to serve on the jury.
 

 “Q. Now, who is this questionnaire sent to? Plow is that determined?
 

 “A.
 
 To the different people in the Parish by the registrar of voter’s list and 'the -telephone book, city directory, different lists that are submitted by school board or any list that we can find that we think we got address for the mixed race one way or the other.
 

 “Q. In this instance here of this grand jury venire, the last one that we’re talking about, was the list of registered voters from Mr. Eraste Landry’s office used?
 

 “A. It was.
 

 “Q. Did that include the list of colored voters as well as white voters?
 

 “A. It did.
 

 “Q. Were any selections made from the list of colored voters ?
 

 “A. No selections were made from colored voters or white voters. They were taken if we thought that they were qualified to serve On the jury.”
 

 The fact that the Grand Jury included no members of the Negro race is, in our opinion, a matter of coincidence and not purposeful exclusion. As stated supra, the composition of the general venire was indiscriminate; the names of the Grand Jury venire were drawn from the general venire. It follows that race was not a factor in selection. See, Article 411, Louisiana Code of Criminal Procedure.
 

 
 *934
 
 Article 402 of the Code of Criminal Procedure provides, “A woman shall not be selected for jury service unless she' has previously filed with the clerk of court of the parish in which she resides a written declaration of her desire to be subject to jury service.” In State v. Comeaux, 252 La. 481, 211 So.2d 620, we stated the reason for the exclusion of women from mandatory jury service as follows:
 

 “Nor can we conclude that the statute exempting women from jury service on the basis of their sex is not based upon a reasonable classification. Women by nature are the center of home and family life. Louisiana, acting in pursuit of the general welfare, may conclude that women may be relieved from the civic duty of jury service. Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). See also State v. Reese, 250 La. 151, 194 So.2d 729 (1967).” In Hoyt v. State of Florida, supra, the
 

 United States Supreme Court considered a Florida statute similar to Article 402, supra. It held the statute constitutional and concluded :
 

 “ * * * Given the reasonableness of the classification involved in Sec. 40.01 (1), the relative paucity of women jurors does not carry the constitutional consequence appellant would have it bear. 'Circumstances or chance may well dictate that no' persons in a certain class will serve on a particular jury or during' some particular period.’ Hernandez v. Texas, supra, 347 U.S. 475, at 482, 74 S.Ct. 667, at 672, 98 L.Ed. 866.”
 

 We conclude that defendant herein suffered no deprivation of his constitutional rights by the omission of women from the’ Jury Commission, Grand Jury, and Petit Jury. No women volunteered for jury service; the following testimony of Mr. LeBlanc affirms this ’ fact:
 

 “Q. In drawing up the list of three hundred names, were any citizens of' the female sex included?
 

 “A. No.
 

 “Q. In fact, all women were excluded, isn’t that right ?
 

 “A. We didn’t have any names submitted to us of any with the intention of willing to serve.
 

 tc
 
 * * ‡
 

 “Q. Were any invitations or notices sent to women advising that they had a right to declare their desire to serve on the jury?
 

 “A. I’ve discussed that with the Assistant District Attorney and I’ve sent her at different women’s clubs to explain to the women the possibility-of being on the jury. The reason-so far that the women have not served is because facilities and accommodations for ladies were not' available in- the' -old courthouse:
 
 *936
 
 But since the new place is being constructed we’re working on the women to submit names and intention to serve.”
 

 Defendant had the burden of proving unreasonable race and class discrimination under the assertions and contentions averred in this bill of exceptions. Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866. This he failed to do; likewise, he proved no violation of his constitutional rights.
 

 Bill of Exceptions No. 2 is without merit.
 

 BILLS OF EXCEPTIONS NOS. 3 AND 4.
 

 Bills of Exceptions Nos. 3 and 4 were reserved when the trial judge maintained the State’s challenge for cause of two prospective jurors.
 

 These two prospective jurors on their voir dire stated in essence that they did not believe in capital punishment and would not bring in a verdict assessing such a penalty even if they found the defendant guilty of the crime charged. They said that they had no doubts that they could determine the guilt or innocence of the accused, but they emphatically said that they would not vote for capital punishment.
 

 We find that the trial judge was correct in excusing these prospective jurors ; he did not violate the ruling of Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), which recites:
 

 “It is, of course, settled that a State may not entrust the determination of whether a man is innocent or guilty to a tribunal ‘organized to convict.’ * * * It requires but a short step from that principle to hold, as we do today that a State may not entrust the determination of whether a man should live or die to a tribunal organized to return a verdict of death. Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected.
 

 “Whatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution. The State of Illinois has stacked the deck against the petitioner. To execute this death sentence would deprive him of his life without due process of law.”
 

 In Witherspoon, supra, the defendant was sentenced to death; the defendant herein has received life imprisonment.
 

 Bills of Exceptions Nos. 3 and 4 are without merit.
 

 
 *938
 
 BILLS OF EXCEPTIONS NOS. 8,
 
 9,
 
 10, 11, 12 AND 13.
 

 Bills of Exceptions Nos. 8, 9 and 10 were reserved to the trial court’s overruling defense counsel’s objection to the in-court identification of the defendant by the companion of the victim.
 
 [4]
 

 Bill of Exceptions No. 11 was reserved to the trial court’s permitting the State to offer in evidence its Exhibit “A” (a picture of Claude Alexander) and its Exhibits “C” and “D” (pictures of the victim’s companion) .
 

 Bills of Exceptions Nos. 12 and 13 were reserved when the trial court permitted the victim to testify with respect to statements she had given at a preliminary examination and thereafter make an in-court identification of the defendant.
 

 The testimony attached to the instant bills reflects that after the occurrence of the crime the victim did not describe her attackers; she was taken to a hospital for treatment. Her companion gave a brief description of the attackers to the police. Thereafter, the victim was present at a police line-up at which Claude Alexander and the defendant appeared with three other prisoners — defendant was not represented by counsel at this line-up. The victim identified Alexander and the defendant as her attackers, and a picture was taken of the group. Her companion appeared at a Grand Jury meeting and when shown the line-up picture identified Claude Alexander and the defendant as the victim’s attackers.
 

 The trial judge did not allow identification of the defendant by the pre-trial line-up to go to the jury. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. He permitted in-court identification to be considered by the jury, and both the victim and her companion positively identified defendant as one of her attackers.
 

 Counsel for the defendant contends that there was no identification prior to the illegal line-up, and that, after the tainted pre-trial confrontation, it is impossible for anyone to state whether or not the identification and observations of the witnesses are independent of and disassociated with the tainted pre-trial confrontation.
 

 We have carefully read the testimony of record and find that it shows that the victim’s companion saw her attackers in the park and had a mental picture of them sufficient to allow recognition at a future date. The testimony also reflects that the companion’s imcourt identification of the defendant was independent of that made before the Grand Jury. The testimony of the victim is to the effect that the faces
 
 *940
 
 of her attackers; .were mentally impressed upon her. Her in-court identification of. the defendant was positive and went to the-jury for its evaluation.
 

 The exhibits and testimony with respect-to the preliminary examination were connected with the in-court identification of the defendant; they were therefore relevant evidence.
 

 A deliberate study of the instant bill's convinces us that the trial judge’s rulings were correct. His Per Curiam to Bill of Exceptions No. 8 recites:
 

 “The Court is of the opinion that the in-court identification of both * * * [victim’s male companion] and * * * [victim] had an independent origin and that both had a prior opportunity to observe the accused for a sufficient time prior to and at the time of the commission of the crime so as to allow a proper identification without the necessity of depending upon the lineup.” See, State v. Singleton, 253 La. 18, 215 So.2d 838; State v. Henderson, 253 La. 981, 221 So.2d 480. Cf. State v. Johnson, 255 La. 314, 230 So.2d 825.
 

 Bills of Exceptions Nos. 8, 9, 10, 11-, 12 and 13 are without merit.
 

 BILL OF EXCEPTIONS NO. 15.
 

 Bill of Exceptions No. 15 was reserved to the trial court’s overruling defendant’s motion for a new trial.
 

 ' The motion for a new trial presents, nothing new; for our. consideration, except the contention that the State did not prove-that the victim was not the wife of the.defendant. This same contention is raised, in Bill of Exceptions No. 16 and will therein-, be discussed and found to be without merit.
 

 Bill of Exceptions No. 15 is without merit..
 

 BILL OF EXCEPTIONS NO. 16.
 

 Bill of Exceptions No. 16 was reserved’ when the trial court overruled defendant’s' motion in arrest of judgment.
 

 The motion in arrest of judgment recites:
 

 “Article 41 of the Louisiana Criminal-Code defines rape as
 

 “‘Rape is the act of sexual inter-' course with a female person
 
 not the wife of, or judicially separated from bed and board
 
 from, the offender, committed without her lawful consent.
 

 * * ijí >
 

 “The record is void of any evidence or testimony establishing that the offender was not the wife [husband] of or judicially separated from bed and board with the female person with whom he is accused of having sexual intercourse. This being an essential element of proof of crime of rape and the State having failed to prove this element, no judgment against him, the said Lee Perry. Pratt, can be lawfully rendered on' said rec.ord.”
 

 
 *942
 
 The record shows affirmatively that there is no marital connection between the victim and the defendant. The victim’s -uncontradicted testimony is to the effect that she did not know the defendant, and that she saw him for the first time in her life the night the crime was committed. The uncontradicted testimony of other witnesses is also to the effect that the -defendant was a stranger to the .victim.
 

 Bill of Exceptions No. 16 is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . Minutes of the trial court, January 15, 1968, recite in part, “In accordance .with the District Attorney’s filing his new indictments and in view of the language of Code 705 stating that the proceedings under the original indictment are not affected except that it may be inconsistent with the indictment under the provisions of this code, in order to protect the rights of the accused, counsel for the accused moves that all of the proceedings under the original indictment, including but not limited to the motion for severance, application for Bill of Particulars, motion to quash and all proceedings in connection therewith, be made a part of the new indictment, and further, that the accused, James [Lee Perry] Pratt, reserves his rights as a pauper, as provided under the Code of Civil Procedure, to obtaining the transcript of the entire proceedings.”
 

 [2]
 

 . The appeal of Claude Alexander was also argued 'iri this Court on the day we heard the instant appeal. Bills of exceptions reserved to the denial of preliminary motions are similar in both appeals.
 

 [3]
 

 . The Official Revision Comment (d) under Article 480 states: “This article expressly authorizes conjunctive allegations in the bill of particulars as well as the indictment. Here again the district attorney may be unavoidably uncertain as to which form of the crime or which intent will be established at the trial. * * * Here, as in the indictment, the state should not be forced to chose in advance between the ways (whether by force or by intimidation) in which the aggravated rape was attempted. The Prince rule (State v. Prince, 216 La. 989, 45 So.2d 366] is codified in this article.”
 

 In the Prince case, the State informed the defendant in answer to an application for a bill of particulars that he was being prosecuted for attempted aggravated rape under subsections (1) and (2) of Article 42 of the Criminal Code, namely, “Where the female resists the act to the utmost, but her resistance is overcome by force,” and “Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.” This Court held that the answer was sufficient.
 

 [4]
 

 . The victim and her companion had been out for the evening and were in a park when they were allegedly approached by the defendant and Claude Alexander. The testimony of the victim’s companion is to the effect that he was threatened, robbed, and beaten before the commission of the instant crime.-