McCALEB, Justice.
 

 Claude Alexander and Lee Perry Pratt were originally indicted by the grand jury for the Parish of Lafayette for having committed the crime of aggravated rape on September 4, 1967. However, following a hearing and disposal of certain motions and pleas prior to trial, the judge granted a ■severance at the behest of Pratt and, thereafter, the District Attorney pursuant to Article 705 C.Cr.P. filed separate indictments against each defendant. Alexander entered a plea of not guilty. After trial, the jury returned a verdict of guilty without capital punishment and he was sentenced to life imprisonment. He has appealed, relying upon the following bills of exceptions,
 
 [1]
 
 for a reversal of his conviction. Some of these bills are common to those reserved by Lee Perry Pratt, who has also appealed and whose conviction has this day been affirmed. See State v. Pratt, 255 La. 919, 233 So. 2d 883, No. 50,014 of our docket.
 

 The record reveals the following facts: About midnight on September 3, 1967, a sixteen year old girl accompanied by her date, Carl Arleth, Jr., an eighteen year old young man, after visiting various places of amusement in Lafayette, Louisiana, went to Girard Park where they decided to stop for a few minutes. While walking in the vicinity of the park lake, they were accosted by two young Negroes, Claude Alexander and Lee Perry Pratt.
 

 These two men informed the couple that they had a gun and grabbed Arleth, robbing him of $4.00. One of the men then assaulted the young girl who began screaming and fighting him off. At that time the other man struck Arleth, knocking him down and, as he lay on the ground, Alexander and his companion assaulted the girl, telling her that she had better do what they wanted or they would shoot both her and her boyfriend. The two men tried to tear off her clothes and succeeded in pulling off her girdle and underwear. Then Alexander had sexual intercourse with the girl while his companion helped to hold her down and quiet her. Following this, the companion
 
 *948
 
 had sexual intercourse with the girl while Alexander held her down. This procedure was again alternated. At that point, the girl had only her bra and dress on, but Alexander pulled off the dress and grabbed her by the wrists, dragged her on her bare skin across, the blacktopped street for a distance of 185 feet and dumped her into the coulee which was eleven feet deep. About this time she blacked out and Alexander then went down into the coulee and again- began having sexual intercourse with her. They were lying in the coulee at the entrance to a large concrete culvert across the road and, while Alexander was having sexual relations with her, the City Police came upon the scene. Two officers, Sidney Broussard and Patrolman John Broussard, were in the patrol car when Sidney Broussard noticed someone running in the coulee. He stopped the car, got out and spotted his light within the coulee where he saw Alexander lying in a prone position on top of the girl. Upon being discovered, Alexander got up, zipped the fly óf his trousers and entered the North end of the culvert right next to where he had been lying. The other officer then ran to the other end of the culvert. At this time Officer Sidney Broussard loudly called on Alexander to come out. Upon the-latter’s failure to do so, the officer fired a shot on the side of the culvert into the ground. Then Alexander- came out on, the North end of the culvert and was placed under arrest by the officers who had him lie on the ground face down. At this time the girl was screaming and -began -.climbing the banks of the coulee, and Sidney Broussard went to her assistance. When he did so, Alexander got up and fled. The officers followed him in close pursuit and finally apprehended him.
 

 The first bill presented by defense counsel for our consideration is designated in the record as Bill of Exceptions No. 10 and was taken to the overruling of Alexander’s motion to quash the indictment. This bill is similar to Bill of Exceptions No. 2 in' State v. Pratt, supra, and, for the reasons hereinafter stated and those given in the Pratt case, we find the complaint to be without merit.
 

 The grounds advanced for qiiashing the' indictment are:
 

 “ * * &
 

 “(1) That citizens who are females were systematically excluded from the Grand Jury list and venire and from the Grand Jury as empaneled.
 

 “(2) That citizens of the Negro race were included in the Grand Jury list, and Grand Jury venire, in such small numbers as to constitute only a token, having no relationship to the number of citizens of the Negro race as compared to the number of citizens of the Caucasian race in the general population in the Párish of Lafayette. and in the Fifteenth. Judicial District of the State of Louisiana.
 

 
 *950
 
 “(3) That the indictment found by the Grand Jury is defective for failing to inform the accused, Claude Alexander, of the facts and circumstances necessary to constitute the alleged crime of aggravated rape.
 

 “(4) That the indictment * * * is invalid and illegal and should be quashed because said indictment was returned by a Grand Jury empaneled from a Grand-Jury venire made up contrary to the provisions of Amendment V, Amendment VI, Amendment XIV and Amendment XV of the Constitution of the United States of America.”
 

 It is obvious, from a mere reading of the grounds above set forth, that the objection stated in paragraphs one and three are clearly without substance. It is well settled that the fact that women do not appear on a general venire list for jury duty, furnishes no cause for quashing an indictment in view of Article 402 of the Code of Criminal Procedure. See also State v. Comeaux, 252 La. 481, 211 So.2d 620; Hoyt v. State of Florida, 368 U.S.
 
 57,
 
 82 S.Ct. 159, 7 L.Ed.2d 118 (1961); and State v. Pratt, supra, this day decided. And the claim in paragraph three that the indictment 'is defective in-that it fails to inform defendant of the nature and cause of the accusation against him is likewise not well founded. The accused is charged under the short form provided in Article 465 C.Cr.P., and this form has many times been held sufficient to satisfy constitutional requirements. State v. Barksdale, 247 La. 198, 170 So.2d 374, and cases there cited.
 

 The main contention under the motion to quash is that Negroes were included in the grand jury list and general venire in such small numbers as to constitute only token representation and, thus, warrants the conclusion that they were systematically excluded by design because of their race from grand jury service.
 

 The question of purposeful inclusion or exclusion of members of a race from jury service is manifestly one of fact, and the burden rested with defendant to establish his claim. See State v. Mack, 243 La. 369, 144 So.2d 363, and cases there cited; In assuming this burden, defendant called to the stand the registrar of voters and the clerk of court, who is also a member of the jury commission. “
 

 The testimony of these witnesses, particularly that of the clerk of court,, as ,we, have found in State v. Pratt, this day decided, does not support counsel’s contention for, after reviewing the evidence in the case, we declare:
 

 “The fact that the Grand Jury in-eluded no members of the Negro race is, in our opinion, a.matter of coincidence and not purposeful exclusion. As stated supra, the -composition .of .the general, venire was indiscriminate; the names of
 
 *952
 
 the Grand Jury venire were drawn from the general venire. It follows that race was not a factor in selection. See Article 411, Louisiana Code of Criminal Procedure.”
 

 In view of the finding in the Pratt case, it would be superfluous to discuss in detail the evidence upon which our conclusion rests. Suffice it to say that the evidence shows that the general venire list of 400 names contained the names of 25 Negroes, a circumstance which lends support to the testimony of the clerk of court that the venire list was chosen from the card index without reference to race. Furthermore, the fact that the 20 names drawn by lot from the general venire to comprise the grand jury venire for the court term, during which defendant was indicted, contained the name of only one Negro cannot be regarded as an indication that Negroes were systematically excluded from grand jury service in the absence of a showing that over the years a pattern has been established whereby only a token number of Negroes has been selected to serve on grand juries in Lafayette Parish. For, without some evidence of this sort, there is no sound basis for rejecting the testimony of the clerk of court (who, incidentally, was the only member of the jury commission consisting of five persons called by defendant to testify), that the general venire of 400 names was selected without consideration of race, color or creed.
 

 Bills of Exceptions Nos. 18, 19, 20, 21, 22 and 23 are interrelated and treated as one in the briefs of defendant and the State. Bills Nos. 18, 19 and 20 were taken when the court ruled, over defense counsel’s objection, that the State could exhibit to Officer Sidney Joseph Broussard, Jr., certain photographs of the victim and her escort, Carl Arleth, showing cuts, scratches and abrasions on their bodies on the day after the rape. Also, the officer was permitted to identify a photograph of the defendant. And Bills 21, 22 and 23 were reserved when the judge permitted these photographs to be shown Auxiliary Patrolman John Broussard for his identification of the defendant, the victim and her escort.
 

 Defense counsel contends that these photographs were used by these witnesses in their testimony before the jury without a proper foundation being first laid for their admissibility since there was nothing to indicate at the time the Broussards testified as to when, where or by whom the photographs were made or their materiality and relevance to the State’s case.
 

 We find no merit in the bills. While it is true that the foundation for the admission of the photographs had not been laid at the time the objections were made and the identification of the persons therein pictured were given by the officers, the fact remains that the State was not attempting to offer the photographs in evidence at the time the police witnesses identified
 
 *954
 
 the persons pictured therein. Later on during the trial, after the proper foundation had been laid, the photographs were' admitted in evidence without objection.-
 

 Article 773 of the Code of Criminal Procedure provides that neither the State nor the defendant can be controlled by the court as to the order in which evidence shall be adduced. However, when evidence requires a foundation for its admission, the foundation must be laid before the evidence may be received. Since the State was not attempting to offer the photographs in evidence, the objection that the foundation for their admission must first be laid was premature and out of context with the announced purpose of their use. But, if the use of the photographs at that time was objectionable, we would still find no substance in counsel’s contention inasmuch as the photographs were properly admitted at a later time when the foundation was laid for their reception in evidence.
 

 Bill of Exceptions No. 24 was taken when the court overruled an objection by defense counsel to a statement made by Carl Arleth, the girl’s escort who, in testifying for the State, declared that when the police arrived he told them “ * * * that Linda had been raped * * Defense counsel conceives that this was opinion testimony and, therefore, inadmissible.
 

 The objection was properly overruled. Arleth was not testifying to an opinion; he was stating a fact, as he had witnessed the rape.
 

 Bill of Exceptions No. 25 was reserved to the trial judge’s ruling permitting the in-court identification of the accused by the State witness, Carl Arleth, Jr., who was present at the time of the commission of the crime. The objection was based on the contention that the proper foundation for the identification had not been laid.
 

 In this Court, however, defendant’s new counsel presents an entirely different theory proclaiming that, in view of the fact the accused was a Negro being tried by an all white jury, “ * * * such an obvious identification was immaterial and irrelevant * * * and could have no other effect than to convey to the jury the witnesses’ belief that the defendant because he was a Negro was the guilty party * *
 

 There is no merit in the bill. Arleth was an eyewitness to the crime, and his testimony shows that he was qualified to make an in-court identification. See State v. Singleton, 253 La. 18, 215 So.2d 838, a case substantially similar to this one, and the authorities there cited.
 

 Bill of Exceptions No. 26 was reserved to the court’s refusal to admonish the jury to disregard the pronunciation of
 
 *956
 
 the'word “Negroes” hy the Assistant District Attorney, Mrs. Frances Gilfoil. It appears from the record that Mrs. Gilfoil pronounced the word Negroes with less emphasis on the letter “o” than commonly used so that the word as she pronounced it sounded somewhat like “nigras.” The judge thought the objection to the pronunciation by Mrs. Gilfoil was frivolous. But counsel in argument here stresses that the pronunciation of the district attorney somehow prejudices defendant before an all white jury.
 

 We agree with the trial judge. Indeed, it is difficult to discern that defendant suffered any prejudice as the, result of the assistant district attorney’s pronunciation of the word Negroes. On the contrary, it appears to us that, in view of the heinous crime committed , by defendant, which was proved beyond a reasonable doubt to the satisfaction of the jury, the members of that body displayed leniency and compassion by returning a qualified verdict of guilty in the case.
 

 Albeit Bills of Exceptions Nos. 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36 have been argued and submitted by both the State and defense counsel as inseparable, in that they refer to the admission, in evidence on rebuttal by the State of a certain inculpatory or exculpatory statement given by defendant, we' think that "discussion of these bills would be more ■ readily under-: Stpod if tliey .were partially segregated.
 

 It appears from the record that defendant took the witness stand in his own behalf and testified that he had gone to the park on the night of the crime with the intention of burglarizing the Yare Club and had obtained a tire tool from the trunk of his car to assist him in doing so; that, while in the park, he heard a noise and as he crossed the bridge he heard a moan; that he walked down into the culvert and found the prosecutrix lying there; and that, soon afterwards, the police officers arrived and arrested him. At this stage of defendant’s testimony, the State informed the court that it desired to introduce an oral inculpatory statement made by the defendant for the purpose of rebutting his evidence.
 

 . Accordingly, the jury was then withdrawn from the courtroom and, thereafter, the State produced Officers Shirley Picard, Sidney Broussard and Anthony Navarre to lay the foundation for the admission in evidence of_ an oral statement of an inculpatory or exculpatory nature which tended to contradict the testimony given by defendant while on the witness stand. During the examination of these witnesses out of the presence of the jury¿ defense counsel reserved Bills of Exceptions Nos. 27, 28 and 29, which were taken when- the judge overruled objections to questions propounded by the district attorney- -to Picard on the ground that they-were leading questions. The fjrst question;
 
 *958
 
 asked was whether Picard or anyone else in his presence did anything to menace or intimidate the defendant or threaten him in any manner so as to cause him to give the statement sought to be introduced in evidence. The court overruled the objection that the question was leading and similar objections to two other questions of the same nature. Whereupon, defense counsel reserved Bills 27, 28 and 29.
 

 We find no substance in the bills. When the State attempts to lay the foundation for the admission of a confession, it is required to show that the statement given by the accused is free and voluntary in. all respects. Hence; it must perforce. propound to the State witnesses questions to establish this as a fact. While the questions propounded may be regarded as leading in a sense, their allowance is within the sound discretion of the judge, and we cannot think of any instance where bills of this sort furnish a valid basis for the reversal of a conviction.
 

 Bill of Exceptions No. 30 was taken to the overruling by the judge of defense counsel’s objection to the reception of defendant’s oral statement in evidence on the ground that thé offer of the statement came too late after the State had rested its case in chief.
 

 We find no merit in the bill. Since the State had notified the defendant it had an inculpatory statement and intended to use it, it had the right to offer it at any stage of the trial upon laying the foundation for its admission.
 

 Bills 31, 32 and 33 were taken to the overruling of objections to questions propounded to Officer Broussard on the ground that they were leading. In this respect, as we have indicated, the bills are on a parity with Bills 27, 28 and
 
 29
 
 hereinabove discussed. One of these bills shows that, when Officer Broussard was asked whether he or anyone else placed defendant in fear or under duress, the objection was made to his testimony on the ground that it would contain conclusions and, when the officer was asked did anyone else threaten defendant in any way to make him give a statement, the same objection was made.
 

 These bills, we think, are obviously without merit.
 

 The same ruling applies to Bills of Exceptions Nos. 34 and 35, which were taken to the overruling of objections to similar questions propounded to Officer Navarre on the ground that they were leading.
 

 ' Bill No. 36 was taken when the judge ruled that the State had proven to his satisfaction that all the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, were given the
 
 *960
 
 defendant, and that the oral inculpatorystatement made by him was free and voluntary. The judge states in part in his per curiam:
 

 “The Court wishes also to state that it was completely satisfied with the testimony of the three officers, Picard, Broussard and Navarre, in connection with the circumstances surrounding the taking of the statement of the defendant. The Court was satisfied that these officers testified truthfully.
 

 - After reading the testimony, we .find no error in the judge’s rulings and, hence, this bill is not well founded.
 

 When defendant was on the stand under cross-examination, he was asked, with respect to his statement to the police, whether he saw the officer type anything on the typewriter. His answer was, “Yes.” At this point defense counsel objected, stating:
 

 “ * * * I would like to make it clear that it is clear that I have before the court objected to what we are now getting into to the questioning under the condition and the statements that we’re now getting into on constitutional grounds, and we’re reserved our bill of exceptions on any of this as being legally admissible in this trial.”
 

 When the judge overruled the objection, counsel reserved Bill No. 37.
 

 We find it difficult to comprehend the meaning of counsel’s objection. However, the court evidently understood it, for it was stated in the per curiam that the bill was merely a reiteration of defendant’s previous objection to the court’s allowance of evidence on defendant’s inculpatory statement. We perceive no error in the ruling.
 

 After the judge found the confession admissible, the jury was returned to the courtroom and defendant resumed his testimony on the stand under cross-examination. At this time he was asked concerning the giving of the statement and, when he denied that he had voluntarily made a statement, the State announced its intention to impeach his testimony. Thereafter, Officers Picard and Broussard were placed on the stand, and they testified that defendant did make the oral statement in question. Defense counsel objected to Officer Picard’s testimony concerning the statement “ * * * for the constitutional reasons I have heretofore urged.” When the objection was overruled, Bill No. 38 was reserved. Later on, during the cross-examination of Officer Picard, defense counsel objected to the officer’s testimony anent the oral statement of defendant on the ground that the entire statement had not been related by the witness, and, when the objection was overruled, Bill No. 39 was reserved.
 

 
 *962
 
 In his per curiam to these bills, the judge remarks that they are simply a reiteration of counsel’s objection to defendant’s inculpatory statement and Officer Picard’s testimony in connection therewith. After an examination of the testimony pertaining to these bills, we find no error in the ruling of the trial judge.
 

 Bill of Exceptions No. 40 is on the same footing as Bills 38 and 39. It was taken while Officer Broussard was on the stand, and counsel objected to the officer’s statement concerning the giving of the oral inculpatory statement. The bill is without merit.
 

 For the reasons assigned, the conviction and sentence are affirmed.
 

 [1]
 

 . Appellant, who has employed new counsel since his conviction, reserved numerous other bills of exceptions numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 17- and 41 during his trial. These bills were perfected but, since they have not been mentioned either in oral argument or in brief in this Court, we presume they have been abandoned. Nevertheless, we have examined these bills and find they either refer to matters which are now moot or that they are without merit.