287 So.2d 518 (1973)
STATE of Louisiana
v.
Charles Ray EDWARDS.
No. 53847.
Supreme Court of Louisiana.
December 3, 1973.
*520 John Barkley Knight, Jr., Winnsboro, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Asst. Atty. Gen., Don K. Carroll, Dist. Atty., S. E. Lee, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
On September 3, 1972, Charles Ray Edwards was apprehended and arrested for, and thereafter charged with, aggravated kidnapping. La.R.S. 14:44.[1] By motion prior to trial, the District Attorney elected to proceed with the prosecution under the lesser included offense of simple kidnapping. La.R.S. 14:45.[2] Edwards was tried *521 by a jury which found him "guilty as charged." He was committed to the Department of Correction and sentenced to serve three years at hard labor.
Twelve bills of exceptions were reserved by defense counsel during the course of these proceedings. The bills have been perfected and are relied upon for reversal of the conviction and sentence.

Bill 1
Subsequent to arraignment, but prior to trial, a motion to quash was filed on behalf of the defendant, alleging as grounds therefor that 1) the grand and petit juries were improperly and unconstitutionally drawn in that women were excluded therefrom; 2) the grand jury was improperly and illegally selected and constituted because the name of Howard Roy Brown was drawn from the grand jury venire to serve but he did not serve; 3) Article 44 of the Criminal Code is unconstitutional; and 4) the short form of indictment for aggravated kidnapping does not meet the requirements of the Louisiana Constitution.

Women on the Jury
The contention that women are excluded from jury service in Louisiana is without merit.
A stipulation entered into between the State and defendant shows that the jury commission did not select women for jury service, for none had previously filed with the clerk of court of the parish a written declaration of her desire to be subject to jury service as the law requires. La.Const, art. VII, 41; La.Code Crim.Proc. art. 402. In effect, the jury commission determined to abide by the law of this State as expressed in the Constitution and the Code of Criminal Procedure:
The Legislature shall provide for the election and drawing of competent and intelligent jurors for the trial of civil and criminal cases; provided, however, that no woman shall be drawn for jury service unless she shall have previously filed with the clerk of the District Court a written declaration of her desire to be subject to such service. All cases in which the punishment may not be at hard labor shall, until otherwise provided by law, be tried by the judge without a jury. Cases, in which the punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict; cases in which the punishment may be capital, by a jury of twelve, all of whom must concur to render a verdict. (La.Const, art. VII, ¶ 41)
A woman shall not be selected for jury service unless she has previously filed with the clerk of court of the parish in which she resides a written declaration of her desire to be subject to jury service. (La.Code of Crim.Proc. art. 402)
Women were not excluded from jury service by the jury commissioners or *522 by law. The effect of our law is to permit them to serve if they volunteer for service; they cannot be compelled to serve otherwise. La.Const. art. VII, ¶ 41; La. Code Crim.Proc. art. 402. This Court has consistently held that Louisiana's constitutional and statutory provisions, requiring women to file with the clerk of court of the parish in which they reside a written declaration of their desire to be subject to jury service before they can be selected, impair no federal constitutional right. State v. Womack, 283 So.2d 708 (La.1973); State v. Taylor, 282 So.2d 491 (La.1973); State v. Roberts, 278 So.2d 56 (La.1973); State v. Enloe, 276 So.2d 283 (La.1973); State v. Washington, 272 So.2d 355 (La. 1973); State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Amphy, 259 La. 161, 249 So.2d 560 (1971); State v. Millsap, 258 La. 883, 248 So.2d 324 (1971); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State v. Dees, 252 La. 434, 211 So.2d 318 (1968); State v. Reese, 250 La. 151, 194 So.2d 729 (1967); State v. Clifton, 247 La. 495, 172 So.2d 657 (1965).

Impaneling the Grand Jury
The motion to quash also alleges that the grand jury was improperly and illegally selected and impaneled.
When the trial court met for the purpose of impaneling the grand jury on February 20, 1973, the judge instructed the sheriff to call the names of all persons listed on the grand jury venire who had been subpoenaed for service. When the sheriff called the name of Howard Roy Brown he failed to answer.
The trial judge then read the qualifications of grand jurors to those present and entertained requests to be excused. After hearing these requests the judge instructed the sheriff to proceed with the drawing of the grand jurors. After drawing several names, the name of Howard Roy Brown was drawnhe again failed to answer when called. The judge then instructed the sheriff to ascertain his whereabouts, in the meantime continuing the drawing of the grand jury.
Eleven grand jurors were then drawn, sworn and seated. Since Brown's whereabouts were not yet known, another name was drawn from the venire in his place, thus filling the composition of the grand jury. Approximately an hour or hour and one-half after Brown's name was first called, and almost one hour after the grand jury retired to deliberate, the sheriff's office located Brown. Brown reported to the judge that he was under the mistaken impression that the subpoena issued to him required his attendance in court at 9:30 in the evening of February 20, rather than 9:30 in the morning.
The defendant contends that once the name of a grand juror is called, that person becomes at that time a member of the grand jury and that the court is powerless to remove him except for legal cause. In support of this position counsel cites State v. Ross, 212 La. 405, 31 So.2d 842 (1947).
In State v. Ross, decided under Article 184 of the 1928 Code of Criminal Procedure, the trial judge held that a juror whose name had been drawn became a member of the grand jury although he was absent. There the judge was informed that the absent prospective juror was available for service and was on his way to court. Under those circumstances, on appeal, this Court held the judge was powerless to remove or excuse him except for legal cause, the rationale being that permitting the judge to excuse prospective grand jurors for other than legal cause would enable him to, in effect, control the composition of the jury.
The distinction between State v. Ross and the case at bar is readily appearent and significant. In the Ross case the judge knew the juror was available for *523 service and would report shortly. To substitute another under such circumstances would permit the judge to effectively nullify the requirement that jurors be drawn "indiscriminately by lot".[3] The prospect that the absent juror would report in the Ross Case was certain and no undue delay or disruption of the impaneling process or deliberations of the jury was anticipated or did in fact occur. In the instant case, however, imposing the rule of the Ross Case would involve a halt to all proceedings until the absent juror's whereabouts were determined. Conceivably this may, in some cases, involved such inordinate delay as to disrupt the orderly proceedings of the grand jury and the court. Brown was not located for an hour or hour and one-half after his name was called. The judge had no way of knowing whether Brown would ever be located and did not feel that the business of the court, the jurors, and numerous witnesses awaiting the impaneling of the jury should be held in abeyance on the chance that Brown would report, without additional delay.
The provisions of our Code of Criminal Procedure are intended "to provide for the just determination of criminal proceedings." They are to be construed "to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay." La.Code Crim.Proc. art. 2.
In our opinion the judge made the practical, common sense decision under the particular circumstances of this case. The Code contemplates vacancies in the grand jury and provides a method for filling these vacancies. La.Code Crim.Proc. art. 415. Exemptions from jury service are also contemplated. La.Code Crim.Proc. art. 403. It does not follow that, because the Code does not specifically cover unexplained absences, the absence of a prospective grand juror should result in a nullification of the entire proceedings. Where the law is silent in such cases, the inherent authority of the court would permit a rule of reason requiring the proceedings to be conducted with dignity and in an orderly and expeditious manner. La.Code Crim. Proc. art. 17.
The law requires that the drawing be "indiscriminately and by lot." This was done, and those jurors available at the time of the drawing who were drawn did in fact serve. There is no evidence or intimation whatsoever that the judge employed a procedure here to influence the selection of jurors for a purpose not sanctioned by law.
Variations from the strict letter of the law in the impaneling of the grand jury does not permit the composition of the jury to be set aside because of insignificant technicalities or irregularities, unless there is a showing that some fraud has been practiced or great wrong committed which would work irreparable injury to the accused. State v. Clifton, 247 La. 495, 172 So.2d 657 (1965); State v. Gros, 204 La. 705, 16 So.2d 238 (1943).

Constitutionality of Article 44
In the motion to quash the indictment, defendant attacked the constitutionality of Article 44 of the Criminal Code defining the crime of aggravated kidnapping. The basis of the attack is that Article 44 is unconstitutional in that it is too *524 vague, general and uncertain; susceptible of many interpretations and constructions; and does not establish an ascertainable standard of guilt; all in violation of Article I, Section 10, of the Louisiana Constitution requiring that "the accused shall be informed of the nature and cause of the accusation against him." Particularly, the contention centers upon the claim that the phrase "to grant any advantage or immunity" used in Article 44 does not have a fixed and definite meaning for a person of ordinary intelligence.
Recognizing the applicability of our decision in State v. Cloud, 248 La. 125, 176 So.2d 620 (1965), defense counsel has not argued the matter. The contention is simply submitted for consideration. In the Cloud Case, though concerned with another article of the Criminal Code defining extortion, we did inquire into the meaning of the identical words which are here claimed to be vague and indefinite. There, on behalf of a unanimous court, it was said:
[T]he word "advantage" means gain, benefit, profit, superiority or favored position; the noun "immunity" means freedom or exemption from penalty, burden, duty or evil. Black's Law Dictionary, Deluxe Fourth Edition (1957). Webster's Third New International Dictionary, Third Edition (1961). Viewed in the context of their ordinary meanings, the words are not extremely difficult to comprehend. They offer proper guidelines to persons of ordinary intelligence as to what conduct is extortion. That is all that our law requires.
There is no merit to this contention. Article 44 is constitutional. Although we realize that this prosecution was under the lesser charge of simple kidnapping we have nevertheless answered this attack upon the constitutionality of Article 44 for whatever effect its validity may have upon this prosecution for an included offense.

Short Form Indictment
"In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him . . . ." La.Const. art. I, ¶ 10.
To satisfy the constitutional mandate the fundamental requirement is that the bill of information or indictment must contain all of the essential elements of the crime intended to be charged in sufficient particularity 1) to enable the defendant to prepare for trial, 2) to allow the court to determine the propriety of the evidence which is submitted upon the trial in order that it may impose the correct punishment upon a verdict of guilty, and 3) to afford protection from subsequent prosecution for the same offense. State v. Thomas, 260 La. 784, 257 So.2d 406 (1972); State v. Dozier, 258 La. 323, 246 So.2d 187 (1971); State v. Wright, 254 La. 521, 225 So.2d 201 (1969); State v. Barksdale, 247 La. 198, 170 So.2d 374 (1964); State v. Straughan, 229 La. 1036, 87 So.2d 523 (1956).
When the indictment or bill of information is drawn in the short form authorized by Article 465 of the Code of Criminal Procedure, the bill of particulars authorized by Article 484 of the Code of Criminal Procedure is available to supplement it and supply the information necessary to enable the defendant in fairness to properly prepare his defense. However, bills of particulars cannot serve to cure a defective indictment or to supply the constitutional requirement that the accused be informed by the indictment of the nature and cause of the accusation. See La. Const. Art. I, ¶ 9, requiring that "Prosecution shall be by indictment or information." When the short form is used, and does not fully spell out in detail the nature and cause of the accusation, it meets constitutional requirements only where the crimes involved and the words used to charge them are well-understood. In such a case the nature and cause of the accusation may be inferred from such words of ordinary and well-understood meaning.
Based upon these principles this Court has approved the short from of indictment for murder, armed robbery, simple robbery, *525 aggravated burglary, simple burglary, forgery, aggravated rape and theft. State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966), cert, denied, 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374; State v. Eyer, 237 La. 45, 110 So.2d 521 (1959) murder; State v. Bowers, 260 La. 436, 256 So.2d 435 (1972); State v. Wright, 254 La. 521, 225 So.2d 201 (1969); State v. Taylor, 253 La. 653, 219 So.2d 484 (1969) simple burglary; State v. Thomas, 260 La. 784, 257 So.2d 406 (1972) forgery; State v. Allen, 273 So.2d 504 (La.1973); State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Alexander, 255 La. 941, 233 So.2d 891 (1970) aggravated rape; State v. Bourgeois, 278 So.2d 501 (La.1973) theft; State v. Howard, 243 La. 971, 149 So.2d 409 (1963); State v. Franklin, 255 La. 830, 233 So.2d 532 (1970) armed robbery; State v. Durbin, 235 La. 989, 106 So.2d 443 (1958) simple robbery; State v. Guillot, 277 So.2d 146 (La.1973) negligent homicide.
In commenting upon the short form of indictment in the 1966 Code of Criminal Procedure, Professor Bennett states that Article 465 retained the short form indictment and extended its availability to a number of other important and well-understood crimes. The specific forms added were carefully studied by the Law Institute in light of the Louisiana jurisprudence and especially Chief Justice Fournet's analysis of the problems in State v. Straughan, supra. It is significant that the short forms have been upheld for crimes that may be committed in a number of ways, provided they have a well-understood meaning and scope. The specific forms added in the 1966 Code did, in Professor Bennett's opinion, meet this test; being for such crimes as abortion, prostitution, unauthorized use of movables, negligent injuring, arson and kiddnapping. Conversely, the drafters of the Code found that it was not possible to formulate special forms for such multifarious statutory offenses as narcotic violations and gambling. 27 La.L.Rev. 175, 195 (1967).
We hold, therefore, that there is no legal infirmity in the short form of indictment for aggravated kidnapping.

Bills 2,4 & 5
During the course of a pretrial hearing on March 29, 1973 the District Attorney moved to amend the indictment to reduce the charge from aggravated kidnapping to simple kidnapping. The trial judge reserved his ruling on the motion until the following week. On April 2, 1973, in open court, the District Attorney announced orally that he was abandoning his motion to amend the indictment and that he would proceed with the prosecution under the lesser included charge of simple kidnapping. Defense counsel objected to the District Attorney's announced intention to proceed with the prosecution under the lesser included charge and reserved Bill No. 2.
The procedure employed by the District Attorney here and approved by the trial judge is identical to that used in State v. Doucet, 177 La. 63, 147 So. 500 (1933). In that case the accused was charged with murder. But prior to proceeding with the trial the State abandoned the charge of murder and elected to go to trial on the charge of manslaughter. There the Court said:
The charge of manslaughter is included in that of murder, being a crime of the same generic class as murder, but one of a lesser degree. In such cases the state may abandon the charge of the greater crime and proceed with the prosecution of the lesser, and no formal amendment of the indictment is necessary for that purpose. A motion in open court in the presence of the accused and entered on the minutes prior to the beginning of the trial is sufficient. State v. Bourgeois, 158 La. 713, 104 So. 627; State v. Kelly, 176 La. 405, 501, 146 So. 6.
The charge of simple kidnapping is included in that of aggravated kidnapping, *526 being a crime of the same generic class, though one of lesser degree. A verdict of guilty of simple kidnapping is responsive to a charge of aggravated kidnapping. La.Code Crim.Proc. Art. 814. We discern no basis for distinguishing the case at bar from the Doucet Case and adhere to that decision as both correct and in keeping with procedure which is simple and expeditious. It is incompatible with the court's amendatory powers. La.Code Crim.Proc. Art. 488. It is, moreover, difficult to understand how defendant can complain because the State will only prosecute for the lesser included offense. State v. Vial, 153 La. 883, 96 So. 796 (1923). See also State v. Ford, 259 La. 1037, 254 So.2d 457 (1971). Cf. State v. Cooley, 260 La. 768, 257 So.2d 400 (1972); Bennett, Prosecution for Included Offenses, 33 La. L.Rev. 304 (1973).
No argument is made that the number of jurors or the number of peremptory challenges approved by the judge were erroneous if the prosecution was proper, as we hold, under the charge of simple kidnapping.
The punishment for simple kidnapping, La.R.S. 14:45, is such that a five-man jury is prescribed. La.Code Crim.Proc. Art. 782. And the judge properly allowed six peremptory challenges to the defendant. La.Code Crim.Proc. Art. 799.
There is no merit to Bills 2, 4 and 5.

Bill 3
Defendant asserts that the trial judge erred in overruling a second motion to quash filed when the answer to a bill of particulars disclosed that the State had no evidence of, and would be unable to prove, certain elements of the crime of aggravated kidnappingthe present or prospective value defendant intended to extort, or the advantage or immunity defendant intended to force, by obtaining control of the kidnap victims.
Prior to the filing of the second motion to quash, and relying upon the procedure approved in State v. Doucet, 177 La. 63, 147 So. 500 (1933), the State elected to go to trial on the lesser included charge of simple kidnapping. Therefore, at the time of the filing of the second motion to quash, the posture of the case was then such that the charge of aggravated kidnapping was no longer relevant. A proper motion to quash would then have required the trial judge to determine whether the facts set forth in the bill of particulars, taken in connection with the indictment, were sufficient to constitute the crime of simple kidnapping, not aggravated kidnapping. La.Code Crim.Proc. Art. 485, 532(5); State v. Heymann, 256 La. 18, 235 So.2d 78 (1970); State v. Bonfanti, 254 La. 877, 227 So.2d 916 (1969); State v. Masino, 214 La. 744, 38 So.2d 622 (1949); State v. Bessar, 213 La. 299, 34 So.2d 785 (1948).
Thus the motion to quash predicated upon the contention that the State had no evidence to prove elements of aggravated kidnapping was moot after the State elected to go to trial on the charge of simple kidnapping.

Bills 6, 7, 8, 9 & 10
A brief narrative of the facts will establish the setting for these bills and delineate the context in which they should be judged.
On the evening of September 1, 1972 the victims, a young man and woman, were out on a date. The young woman spilled a soft drink in the car they were occupying. Before returning home to Baskin, Louisiana, that night, it was decided to go to a car wash in Winnsboro, Louisiana, to clean out the automobile. At approximately 11:30 p.m. while at the car wash, a black man ran up to the vehicle, leveled a pistol at the young couple, and ordered them to drive him to Baskin.
After driving the assailant to a deserted house out in the country, where he apparently *527 intended to meet someone, they were compelled to drive to Delhi, Louisiana, and then back to Baskin. In Baskin, while heeding the assailant's directions, they drove past the young man's residence, whereupon he swerved into a ditch and the assailant fled the scene. It was then, according to witnesses in the house, that the girl came in "horrified". The occupants of the house testified the girl was "excited", she was "hollering and telling me all about what happened," she was "crying". The boy ran into the house and "hollered (to his sister) and told her that this follow was after ushad kidnapped us." He testified he "was pretty well shook up". Immediately after he got out of the car he "ran into the house," one hundred feet away. It didn't take long "not a minute".
The statements, to which the defense objects, made by these victims under these circumstances were clearly "events speaking for themselves under the immediate pressure of the occurrence, through the instinctive, impulsive and spontaneous words and acts of the participants." La. R.S. 15:447. These declarations were not narrations of the events. As such they were part of the res gestae and admissible in evidence. There is no merit to these bills.

Bills 11 and 12
In each instance when these bills were reserved, the defense witness David Mock was testifying. A previous defense witness, Jimmie Lee Jones, had testified to certain matters which the witness Mock contradicted. The District Attorney cross-examined Mock as follows:
Q. Then if Jimmie Lee Jones testified you are supper there at about twelve o'clock . . . (Objection by defense counsel.)
Q. If she made that statement would you say she was wrong?
A. What statement is that?
Q. That you ate supper there about twelve o'clock that night? (Defense counsel again interrupts.)
Q. Would you answer may question, David?
A. If she say I had supper before I left there that night she'd be wrong.
Defense counsel objected that this was improper cross-examination.
In his per curiam the trial judge states that the prosecutor merely intended to show this discrepancy in the testimony to the jury; the jury was not led to believe that it must accept the testimony of one witness or the other nor was it otherwise hampered by this cross-examination in evaluating the testimony of Mock or Jimmie Lee Jones. The sole effect of the cross-examination was to call attention to the contradiction which was so patent that it could not possibly escape the attention of the jury. No conclusion was drawn for the jury, nor was the cross-examination unfair. State v. Guillory, 140 La. 361, 72 So. 995 (1916).
These bills have no merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
BARHAM, J., concurs and assigns reasons.
BARHAM, Justice (concurring).
I concur rather than dissent because the consistent jurisprudence out of this Court permits the exclusion of women from jury service. I am of the opinion that Louisiana Constitution, Article 7, § 41 and La.C. Cr.P. Article 402, which exclude women from jury service in Louisiana are in violation of the United States Constitution.
I respectfully concur.
NOTES
[1] La.R.S. 14:44:

"Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
"(1) The forcible seizing and carrying of any person from one place to another; or
"(2) The enticing or persuading of any person to go from one place to another; or
"(3) The imprisoning or forcible secreting of any person.
"Whoever commits the crime of aggravated kidnapping shall be punished by death; provided that if the kidnapped person is liberated unharmed before sentence is imposed then the sentence of death shall not be given but the offender shall be sentenced to life imprisonment at hard labor."
[2] La.R.S. 14:45:

"Simple kidnapping is:
"(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent; or
"(2) The intentional taking, enticing or decoying away, for an unlawful purpose, of any child not his own and under the age of fourteen years, without the consent of its parent or the person charged with its custody; or
"(3) The intentional taking, enticing or decoying away, without the consent of the proper authority, of any person who has been lawfully committed to any orphan, insane, feeble-minded or other similar institution.
"(4) The intentional taking, enticing or decoying and removing from the state, by any parent of his or her child, from the custody of any person to whom custody has been awarded by any court of competent jurisdiction of any state, without the consent of the legal custodian, with intent to defeat the jurisdiction of the said court over the custody of the child.
"(5) The taking, enticing or decoying away and removing from the state, by any person, other than the parent, of a child temporarily placed in his custody by any court of competent jurisdiction in the state, with intent to defeat the jurisdiction of said court over the custody of the child.
"Whoever commits the crime of simple kidnapping shall be fined not more than two thousand dollars or be imprisoned, with or without hard labor, for not more than five years, or both."
[3] La.Code Crim.Proc. art. 413:

"The grand jury shall consist of twelve persons qualified to serve as jurors, selected or drawn from the grand jury venire.
"In parishes other than Orleans, the court shall select one person from the grand jury venire to serve as foreman of the grand jury. The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury. The envelope containing the remaining names shall be replaced into the grand jury box for use in filling vacancies as provided in Article 415.
"In the Parish of Orleans, the court shall select twelve persons from the grand jury venire, who shall constitute the grand jury. The court shall thereupon select one of the jurors to serve as foreman."