249 So.2d 143 (1971)
258 La. 1094
STATE of Louisiana
v.
Joseph RICHEY.
No. 50938.
Supreme Court of Louisiana.
June 7, 1971.
Rehearing Denied June 28, 1971.
*145 Gold, Hall, Hammill & Little, Jimmy M. Stoker, James D. Davis, Alexandria, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Martin H. Laird, III, Asst. Dist. Atty., for plaintiff-appellee.
HAMLIN, Justice:
Defendant appeals from his conviction of Armed Robbery, LSA-R.S. 14:64, and his sentence to serve thirty years in the Louisiana State Penitentiary. Twenty-seven bills of exceptions reserved during the course of the proceedings are presented for our consideration.
The record discloses that shortly after Herbert Reiszner, proprietor of a general merchandise store at Meeker, Louisiana, on *146 Highway No. 167, Rapides Parish, opened his store at 7:30 A.M., March 14, 1970, a car was driven in front of the gasoline pumps situated outside of the store; the driver, who left the engine running, directed that the car be filled with gasoline; after being instructed to turn off his engine, the man did so and entered the store; upon entering the store to calculate the bill, Reiszner saw the man trying on capsthey were similar to golf caps, dark green or grey, bearing a gold emblem in the shape of a fishand on seeing Reiszner, the man laid his sun glasses and a cap on the counter; aiming a small 22 caliber pistol at the storekeeper, the man demanded that he give him his money; Reiszner threw two billfolds on the counter, and after removing approximately $200.00 from them the man departed, taking with him the stolen money, the sun glasses, and a cap.
On hearing the car engine start, Reiszner, who had been told by the robber to lie on the floor, jumped up and observed the direction taken by the driver. He telephoned the State Police, giving a complete description of the robber, the robber's car, and the clothes worn by the subject. This notification was followed by a call to the Sheriff's Department with a repetition of the description. Reiszner then discussed the robbery with his wife, relating to her all details of the incident, after which she left to search for the robber.
Law enforcement men arrived at the store shortly after the robbery and were given a complete account of what had taken place. Reiszner then went down to Lloyd's Bridge, approximately two miles from his store, to observe a car which had been involved in an accident; he identified the car as the one driven by the robber. Inside the car were a small pistol (not the one pointed at Reiszner), sunglasses, and a pink slip; the driver of the car was not present, and it was later determined that the car had been stolen from Byron G. Bunch of Gramercy, Louisiana, and that the pistol found in the car belonged to him.
Johnny Wilmore, Chief of Police of Cheneyville, Louisiana, and a Deputy Sheriff for Rapides Parish, spoke with Mrs. Reiszner in Cheneyville at approximately 8:30 A.M., a short time after the robbery. She gave him a complete description of the robbery, and he immediately went to Lloyd's Bridge and observed the wrecked car; a lengthy discussion ensued between him and other officers present. During the afternoon he discussed the robbery with Mr. Reiszner and received a complete description of the robber. At approximately 10:30 P.M., Wilmore, accompanied by Officer William T. Dugan, saw the defendant in a residential area; realizing that he was not a local man, Wilmore alighted from his car and engaged the defendant in conversation in an area that was not well lighted. The officers then left the defendant to pursue a speeding car. At approximately 11:45 P.M., Wilmore, riding with Dugan, saw the defendant at the bus stop on Main Street and Highway No. 71, Cheneyville, a well lighted area. Dugan stopped the car, and Wilmore walked to the sidewalk where he questioned the defendant. After questioning, Wilmore informed the defendant that he was placing him under arrest. Wilmore's reason for arrest was probable cause of armed robbery and auto theft. Defendant was placed in the back of the police car, neither handcuffed nor restrained, and taken to the exterior of the Reiszner store. With one foot on the ground and the other one still in the car, defendant reached in his pocket and pulled out some money, saying to Officer Wilmore, "Here's the money, I spent part of it, the gun is in the car." With defendant standing near the car and a flashlight directed on his face, Reiszner identified him as the man who had robbed him. After allegedly being given the Miranda warnings and handcuffed, defendant was taken to the Rapides Parish Sheriff's Office where he was booked for Armed Robbery and Auto Theft; he was then searched, and among the articles removed from his person were a 22 caliber pistol and a cap. A bill of information filed against the defendant on March 24, 1970, *147 charged him with the armed robbery of Herbert Reiszner, Jr. on March 14, 1970.

BILL OF EXCEPTIONS NO. 1
Bill of Exceptions No. 1 was reserved to the trial court's denying defense counsel's motion for a preliminary hearing.
The Minutes of Court of April 3, 1970, recite, in part:
"Motion for continuance of arraignment was taken up, argued and submitted. Motion denied. Hearing on motion for preliminary hearing, was called. Motion argued and submitted. Motion denied. To which ruling of the Court, counsel objected and reserved bill of exception. The accused was formally arraigned. Defendant stood mute. Court ordered that a plea of not guilty be entered."
Herein, counsel for the defendant contend that the accused and his counsel were without any knowledge whatsoever of whether the State had or purported to have any evidence of identification, confession or inculpatory statements made by the accused, and that the accused was first frustrated in his efforts to probe into the State's case by denial of his motion for a preliminary examination or hearing.
Article 292, LSA-C.Cr.P., provides that before the finding of an indictment or the filing of an information, the court, on request of the State or of the defendant, shall immediately order a preliminary examination in felony cases. "The right to preliminary examination in this State is designed primarily to determine whether probable cause exists to charge the accused. It is also an important safeguard against high-handed police procedures and third degree methods. It provides an opportunity to bring defense counsel into the pictureimplementing the constitutional privilege against self-incrimination and the right to bail. * * *" State v. Hudson, 253 La. 992, 221 So.2d 484, 489, 490 (1969). Article 292 further provides that after the finding of an indictment or the filing of an information, an order for a preliminary examination in felony cases may be granted by the court at any time either on its own motion or on request of the State or of the defendant. "* * * the law is well settled in this state and under the federal system that, since the purpose of a preliminary hearing is to determine probable cause, no such hearing is required where the defendant has been indicted by a Grand Jury [the same principle applies to the filing of a bill of information] because the fact of indictment evidences probable cause. * * *" State v. Singleton, 253 La. 18, 215 So.2d 838, 839, 840 (1968). Therefore, after the finding of an indictment or the filing of an information, an order for a preliminary examination in felony cases is a matter within the sound discretion of the presiding judge. State v. Hudson, supra.
As stated supra, the present bill of information was filed against the defendant on March 24, 1970, and the motion for a preliminary hearing was filed on April 2, 1970. The granting or refusing of a motion for a preliminary hearing was therefore a matter within the discretion of the trial judge. Under the facts and circumstances herein, we find no abuse of discretion by the trial judge; no error exists in his ruling. State v. Manuel, 253 La. 195, 217 So.2d 369. Additionally, the jury returned a verdict of guilty, and we shall find, infra, that the bills of exceptions presented are without merit. The correctness of the trial judge's ruling with respect to a preliminary hearing is now a moot issue. State v. Pesson, 256 La. 201, 235 So.2d 568.
Bill of Exceptions No. 1 is without merit.

BILL OF EXCEPTIONS NO. 2
Bill of Exceptions No. 2 was reserved to the trial court's ruling that the State's answer to a motion for a bill of particulars was sufficient. It was also reserved to the trial court's overruling defense counsel's motion challenging the sufficiency *148 of the State's answer to the motion for a bill of particulars. The Bill questions the correctness of the trial court's denial of a motion for continuance and its denial of a motion to suppress evidence and identification.
Counsel for the defendant argue herein:
"As may be noted from the statement of the case, one of the principal items of the State's evidence was the oral inculpatory statement and incriminating action of Joseph B. Richey related by Deputies Wilmore and Duggan about which they testified and which they stated took place when Richey was taken to Reiszner's for identification after he was arrested in Cheneyville. Although the State gave notice, presumably under Article 768 of the Code of Criminal Procedure, of intention to introduce evidence of `oral statements' made by the accused including the one referred to above, there was no way under the rulings of the Court, for the accused or his counsel to know what the `oral statements' related to. (This matter is subject to Bill of Exception No. 23). Under the circumstances the three motions covered by Bill of Exception No. 2 are quite critical to the accused's case. These three matters were the motions made before trial for a Bill of Particulars, Motion to Suppress Evidence and Identification and for a continuance.
"* * *
"Other paragraphs broadened the Bill to cover physical evidence. In its answer to the Motion, the State set forth in Paragraph 6 of the answer that the State `has no written or videotaped confession which it will seek to introduce into evidence.' As pointed out, the State's notice of intention mentioned `oral statement'. However, because the accused's spoken words and overt action were not written, the State neatly avoided giving any suggestion before trial that Deputy Wilmore or Deputy Duggan would give testimony of a highly inculpatory statement and action.
"By denying the accused the right to take testimony of these officers in connection with its motion to suppress evidence, the accused was further frustrated in his efforts to require the State to give him what it would have been required to give if the same had been in written form. Article 703, Code of Criminal Procedure.
"Under the circumstances it was also improper for the trial court to deny the accused's motion for continuance. For all of the foregoing reasons, it is respectfully submitted that the accused's Bills of Exceptions Nos. 1 and 2 [are] good."
The following per curiam of the trial judge explains the reasons for his ruling:
"This bill of exception encompasses several complaints. One is the ruling of the Court that the State's answer to the defendant's motion for a bill of particulars was adequate. A mere reading of the answer fully discloses that the Court was correct in its ruling. The accused was fully informed of the nature of the charge against him and had more than sufficient information to enable his counsel to provide him a defense.
"The Court's ruling denying the continuance was proper. The motion for continuance had no basis in law.
"The Court will go into a little more detail on the complaint regarding the motion to suppress.
"After the adoption by the Legislature of the Motion to Suppress defense counsel have sought to use this motion as a discovery device to determine what evidence the State has against the defendant. The motions to suppress, as the one in this case, are vague, general, indefinite and obscure. The motions state nothing. The motions make no complaints specifically. The motions just generally state that the State has evidence which they shouldn't have. Based. upon this then defense counsel wants to have a full discovery of all of the State's *149 evidence. This was not the intent of the law. The law should not be prostituted in this manner.
"The defendant alleged that any evidence, testimonial or physical, including any statements, etc. in the hands of the law enforcement or the District Attorney was obtained in violation of his constitutional and statutory rights. This alleges nothing. Under this vague blanket allegation the defendant wanted to call each police officer and other witnesses and conduct a fishing expedition and discover the state's entire case.
"If such practice is condoned then each case will be tried twice. If this comes to pass it will be necessary to double the police force because some will be undergoing examination on such a motion at all times. It will also be necessary to double the District Attorney's staff, the number of judges and courtroom facilities."
We find that the trial judge committed no error in his rulings with respect to the instant bill; he did not abuse his discretion. Defendant was not entitled to the information be sought. Defense counsel's motion to suppress was vague and general; counsel did not pray that specific evidence be suppressed for specific reasons; the motion could not be entertained or considered under the facts and circumstances surrounding its filing.[1] Counsel's attempt at discovery is not permitted under our rules of criminal procedure. Cf. State v. Square, 257 La. 743, 244 So.2d 200; State of Louisiana v. Mitchell, rehearing refused May 3, 1971, 258 La. 427, 246 So.2d 814. We conclude that defendant suffered neither prejudice nor violation of his constitutional rights.
Bill of Exceptions No. 2 is without merit.

BILLS OF EXCEPTIONS NOS. 3, 7, 8, 9, 10 and 11
Bills of Exceptions Nos. 3, 7, 8, 9, 10 and 11, reserved during defense counsel's voir dire examination of prospective jurors, were taken to the trial court's restriction of questions propounded by defense counsel to prospective jurors. They will be jointly determined.
Bill of Exceptions No. 3 was reserved by defense counsel when the trial court disallowed the following questions propounded to prospective juror Alton Guillory, a barber, who was accepted by both the State and the defense and served as a juror during defendant's trial:
"Do you know the meaning of the presumption of innocence, which the defendant is to receive in this case?
"Mr. Guillory, can you afford this defendant the presumption of innocence to which the law gives him?"
*150 Bill of Exceptions No. 7 was reserved when the trial court disallowed the following question propounded to the prospective juror Joe P. Dantin, an electrician, who was accepted by the State and excused by the defense and did not serve as a juror at defendant's trial:
"As you stand here today, sir, can you afford this defendant the full presumption of innocence, can you in your own mind right now feel that he is innocent of the crime that he is charged with?"
Bills of Exceptions Nos. 8 and 9 were reserved when the trial court, during the questioning of the prospective juror Joe P. Dantin, directed defense counsel "not to ask any more questions of any potential juror pertaining to reasonable doubt, presumption of innocence, anything along those lines."
Bill of Exceptions No. 10 was reserved when the trial court held improper the following question propounded to the prospective juror Joe P. Dantin:
"Sir, in weighing the identification testimony of the defendant, will you consider the witness's capacity for memory, for observation, his familiarity or unfamiliarity with the defendant, and any bias or prejudice he may have toward the accused?"
Bill of Exceptions No. 11 was reserved during the question of prospective juror Robert L. Sextonhe served as a juror during defendant's trialwhen the trial court directed defense counsel "not to ask any questions with reference to the law, specifically matters touching on identification, presumption of the innocence, and so on."
Primarily, the trial judge restricted defense counsel on the voir dire herein because he felt that it was not the function of counsel to determine the jurors' knowledge of law; there were other reasons for the restriction which will be discussed, infra.
Article 786, LSA-C.Cr.P., provides:
"The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case."[2] (Emphasis ours.)
"Voir dire examination is designed to test the competence and impartiality of prospective jurors and may not serve to pry into their opinions concerning evidence to be offered at the trial." State v. Square, 257 La. 743, 244 So.2d 200, 226. "Moreover, hypothetical questions and questions of law are not permitted in the examination of jurors which call for a pre-judgment of any supposed case on the facts." State v. Smith, 216 La. 1041, 45 So.2d 617. "It is not proper for counsel to interrogate prospective jurors concerning their reaction to evidence which might be received at the trial." State v. Williams, *151 230 La. 1059, 89 So.2d 898, 905. "* * * jurors are not supposed to know the law, and are not incompetent because their crude opinions may not be in accord with the views of jurists and textwriters." State v. Dreher, 166 La. 924, 118 So. 85. "It is not permissible for counsel to question jurors as to their individual opinion or belief as to what the law is or ought to be in a given case or under certain circumstances. It is true that the Constitution declares that jurors are the judges of both the law and the facts in a criminal case on the question of the guilt or innocence of the accused party, but this is true with respect to the law only in the sense that they are to accept the law as given to them in the charge by the court and apply it to the facts of the particular case." State v. Webb, 156 La. 952, 101 So. 338, 339.
Our holdings, supra, with respect to voir dire, some before the enactment of our new Code of Criminal Procedure, have all been based on the predicate that the rulings of the trial judge on voir dire will not be disturbed unless he has committed an abuse of his discretion. Art. 786, LSA-C.Cr.P., supra, prescribes that the scope of the examination shall be within the discretion of the court; therefore, the voir dire examination in each criminal case is within the discretion of the judge trying the case. The following pertinent statement was made in State v. Schoonover, 252 La. 311, 211 So.2d 273, 275 (1968): "The extent to which counsel may examine jurors on their voir dire rests largely within the discretion of the trial judge. State v. Green, 244 La. 80, 150 So.2d 571 (1963). A wide latitude in the exercise of the judge's discretion is allowed by a liberal attitude of the appellate courts. See State v. Hills, 241 La. 345, 129 So.2d 12 (1961). In general, however, we have not approved of lengthy statements of particular phases of law being expounded to jurors on their voir dire examination as a preface to interrogation, for this practice tends to facilitate attempts to commit the juror's vote in advance of deliberation. Care should be exercised by the trial court to prevent this result. La.Code of Crim.P. art. 357 (1928). State v. Bickham, 236 La. 244, 107 So.2d 458 (1958)."[3] See, State v. Newton, 241 La. 261, 128 So.2d 651; State v. Rogers, 241 La. 841, 132 So.2d 819. Cf. State v. Brazile, 229 La. 600, 86 So.2d 208.
In his per curiam to the instant bills, the trial judge states, in part:
"It was common practice in this area, in the past, for attorneys to ask questions of this nature and get the juror to answer in the affirmative. Then on final argument to tell the jurors `I asked you this particular question and you stated that you would apply that law. Now it becomes your duty to apply that law and acquit the defendant.' This puts the jurors in an embarrassing and seemingly compromised position. I have had jurors to complain to me that the lawyer was incorrect, that they had not made any commitment. These questions are trick questions or catch questions.
"It had gotten to be the practice in this area for each prospective juror to be examined quite extensively on his knowledge of every phase of the law that would come into play during the trial. The jurors were questioned and extensively cross-examined on presumption of innocence, reasonable doubt, circumstantial evidence, specific intent, general intent, principals and accessories after the fact, their knowledge of each phase of the law under which the defendant was charged, the manner in which they were to weigh the testimony of the witnesses. As a matter of fact voir dire examination in Rapides Parish had gotten to be a course in criminal law and procedure for prospective jurors. It had gotten to the point that it was taking 2 and 3 days to *152 pick juries for routine uncomplicated cases. It had gotten to the point of being absolutely ridiculous. Prospective jurors were beginning to complain and the public was beginning to complain.
"This writer felt that this improper and oppressive tactic should be stopped. This writer adopted a policy over two years ago of requiring the attorneys to restrict their voir dire examination to the qualifications of the prospective juror. It was the position of this writer, under the statute and the jurisprudence, that a juror's knowledge of the law was not a part of his qualifications. Defense counsel have always been permitted to ask each prospective juror if they would apply the law as given to the jury by the Court. This is all that is required of the juror.
"* * *
"As the writer stated earlier this practice of restricting the attorneys to determining the qualifications of the jurors and not their knowledge of the law has been in effect for several years. The length of time of picking juries has been reduced from 2 or 3 days to 2 or 3 hours. This has not resulted in any prejudice to defendants. To my recollection out of the last 8 cases tried in front of the writer 5 resulted in verdicts for the defendant. The writer feels that it is his duty under his oath as well as under the positive provisions of the law to stop, on his own initiative, unnecessary and prolonged examinations that have no bearing on the qualifications of a juror to sit on a particular case."
Under the facts and circumstances existing in the trial court at the time the instant bills were reserved, we do not find that the trial judge abused his discretion in disallowing the questions defense counsel propounded to the prospective jurors. The trail judge's per curiam, supra, explains his reasons for his rulings; we find them reasonable herein. Whether the questions propounded would be improper in every criminal case, we are not called on to say. Cf. State v. Peltier, 229 La. 745, 86 So.2d 693. The trial judge charged the instant jury at length; the jurors were apprised of guilt, innocence, reasonable doubt, and presumption of innocence. See, LSA-C.Cr.P. Art. 801. Defense counsel have not shown that defendant had to accept an obnoxious juror, nor have they shown that defendant suffered any prejudice. "The judge's exercise of sound discretion in ruling will be sustained unless unwisely exercised, providing that he allows considerable latitude in the examination of jurors. State v. Rogers, 241 La. 841, 132 So.2d 819 (1961), cert. denied, 370 U.S. 963, 82 S.Ct. 1589, 8 L.Ed.2d 830. We are satisfied these standards have been observed." State v. Square, 257 La. 743, 244 So.2d 200, 231. See, 24A C.J.S. Criminal Law § 1900 b, p. 971 et seq.; State v. Manley, 54 N.J. 259, 255 A.2d 193 (1969).
Bills of Exceptions Nos. 3, 7, 8, 9, 10 and 11 are without merit.

BILLS OF EXCEPTIONS NOS. 4 AND 5

(Presented without argument)
Bills of Exceptions Nos. 4 and 5 are almost identical and will be jointly determined.
Bill of Exceptions No. 4 was reserved when the trial judge overruled defense counsel's objection to the State's exercising its second peremptory challenge against prospective juror James D. Billes.
Bill of Exceptions No. 5 was reserved when the trial judge overruled defense counsel's objection to the State's exercising its third peremptory challenge against prospective juror Henry Talbot.
Defense counsel contended that the peremptory challenges were exercised because the prospective jurors were members of the black race; they argued that the trial judge's rulings deprived defendant of equal protection of the laws.
*153 The trial judge explains the reasons for his rulings in the following per curiam:
"These two bills of exception present nothing for review. The state is premitted twelve peremptory challenges the same as the defendant. The Court can not control the State in its use of the preemptory challenges.
"This writer will give to the Supreme Court the benefit of his personal observation of the practice of the present District Attorney in the trial of cases of members of the black race. The Court has observed the District Attorney and his assistants in numerous trials and and can definitely state that neither the District Attorney nor his assistants exercise a peremptory challenge against a prospective juror merely because he is a member of the black race. This writer has personally observed the state accept members of the black race on the jury."
We find that the trial judge did not abuse his discretion in allowing the State to exercise its peremptory challenges against the two prospective jurors, supra. Defendant did not suffer a denial of equal protection of the laws.
Bills of Exceptions Nos. 4 and 5 are without merit.

BILL OF EXCEPTIONS NO. 6

(Presented without argument)
Bill of Exceptions No. 6 was reserved when the trial court overruled defense counsel's objection to the trial court's excusing prospective juror Sidney Pilot, a member of the black race.
We find no merit in this Bill and agree with the following per curiam of the trial judge:
"* * * The note that I dictated is as follows:
`"On the morning that the jurors on the panel reported, the Court read the qualifications and the exemptions. The prospective juror Pilot came up and when asked why he thought he should be excused he stated that he could `read and write well'. He emphasized this. I do not know why he thought he had to emphasize it because no one at the time had questioned his ability to read and write. He stated that he thought he should be excused from jury service because he kept up a yard for some lady in Alexandria and attended to another old lady that was helpless. I informed him that this was not a reason to be excused. While I was in Court this prospective juror's employer called up and stated to my secretary that Pilot was feeble minded and that he was not able to read and write, that he was just telling us that he was able to read and write.
`"When Court recessed for the noon lunch the Judge's secretary relayed this information. Later on in the day Pilot was called up as a prospective juror. The Court gave the information regarding the telephone call to the District Attorney and defense counsel at the time that Pilot was called to the jury box.
`"The prospective juror was questioned and seemed to be giving proper answers until he was asked if he knew the defendant or who the defendant was and he stated that he was the defendant. It was at this time that we discovered that he felt that he was the one that was being tried. After further interrogation the District Attorney submitted him for cause. The Court excused him for cause. I instructed the prospective juror that he was excused and that he could go. He walked out of the jury box, passed by the side of my bench and came up to the front of it and asked me if there were any charges. I told him that there were none. He wanted to know if all charges had been dropped and then I realized exactly what he was saying. I told him yes that all charges had been dropped and he had nothing to worry about. As he walked away he turned his head and stated to the *154 Judge I will be more careful next time.'"'"
Bill of Exceptions No. 6 is without merit.

BILL OF EXCEPTIONS NO. 12

(Presented without argument)
Bill of Exceptions No. 12 was reserved when the trial court overruled defense counsel's objection to the following statement made by the District Attorney in his opening statement, "This was a stolen automobile being driven by the defendant, Joseph Richey."
Defense counsel objected to the statement, supra, and to any further comment concerning the vehicle's being a stolen automobile on the ground that there was no charge against the defendant in this case with reference to theft of an automobile. They argued that the reference to the vehicle as being a stolen automobile was irrelevant to the charges in this case.
The evidence, supra, disclosed that the wrecked vehicle driven by the robber of Mr. Reiszner was the property of Byron G. Bunch of Gramercy, Louisiana. Bunch testified during trial that his car had been stolen prior to the instant robbery. We find that the District Attorney told the truth in his opening statement when he referred to the instant car as a stolen automobile. His recitation was of a fact that he intended to prove during trial.[4] The District Attorney's statement was relevant to the presentation of the State's case against the defendant.
Bill of Exceptions No. 12 is without merit.

BILL OF EXCEPTIONS NO. 13

(Presented without argument)
Bill of Exceptions No. 13 was reserved when the trial judge overruled defense counsel's objection to the following testimony given by the victim Herbert Reiszner:
"A. He laid a cap and some sun glasses down on the counter and I started to walked to the adding machine and started to add up these purchases and next thing I heard was `give me your money.'
"Q. Who said that? I mean without identifying any
"A. The customer."
Counsel for the defendant stated:
"I am going to have to object to what has been told to this witness because so far it is hearsay, it hasn't been connected up with who said it. I object to it on that basis and ask that the Jury be instructed to disregard it."
Mr. Reiszner's testimony that the robber stated, "give me your money" was not hearsay. LSA-R.S. 15:434. He was relating an act that transpired; he was describing the events that occurred when he was robbed on March 14, 1970.
Bill of Exceptions No. 13 is without merit.

BILLS OF EXCEPTIONS NOS. 15 AND 16

(Jointly reserved)
Bills of Exceptions Nos. 15 and 16 concern Mr. Reiszner's identification of the defendant as the man who robbed him.
Testimony of record with respect to the reservation of these bills is as follows:
"Q. Let me ask you this question Mr. Reiszner, can you at this time, based solely on your recollection of the robber as you remember him during the robbery, identify the person that robbed you?
*155 "A. Yes, sir.
"Q. Is that person in the courtroom?
"A. Yes, sir.
"BY MR. DAVIS: Your Honor, at this point, we have to object and I ask that the jury be retired.
"BY THE COURT: Take the jury out please.
[Colloquy]
"BY MR. DAVIS: We respectfully reserve a bill. We do this again when court opens up, when the jury is brought back in?
"BY MR. LAIRD: We are going to ask the question, you can do what you want.
"BY THE COURT: Bring the jury in.
"BY MR. LAIRD:
"Q. Mr. Reiszner, do you see the person in the courtroom that robbed you?
"A. Yes, sir.
"Q. Would you point him out, please?
"BY MR. DAVIS: At this point, I object your Honor on the basis of lack of proper foundation has notthere has not been a proper foundation laid for the identification. Number two that the identification of this witness is tainted by the supposed identification that he made later in the day after the defendant was arrested without proper cause and the fact that the defendant was not properly warned of his rights.
"BY THE COURT: Overruled.
"BY MR. DAVIS: To which ruling we resepectively reserve a bill of exception.
"BY MR. LAIRD:
"Q. Would you now answer the question sir?
"A. He's right over there.
"Q. Where sir?
"A. Sitting right next to the lawyer that was just speaking.
"BY MR. LAIRD: Let the record reflect that the witness is pointing to the defendant, Joseph Richey. If it please the court, the State has no further questions of Mr. Reiszner at this time. We do want to have the option to recall him at a later time when appropriate foundation has been laid for more further testimony.
"BY THE COURT: All right sir."
Because of the issues presented by defense counsel in these bills, we quote the joint bill, in part:
"In support of the defense objection, counsel argued that defendant was taken into custody in Cheneyville, Louisiana by two deputies and taken to Reiszner's Store where he was allegedly identified by Herbert R. Reiszner, Jr. in the illumination of a flashlight and that all of this was done without any prior warning being given to the defendant or any explanation of his rights being given to him, including the right to have counsel present and including the right to be identified only in a line up with counsel being present. Counsel for defendant stated that his objection to Herbert R. Reiszner, Jr. being permitted to identify the defendant in court was based on two grounds, namely (1) lack of proper foundation to ask the next logical question, that is, to request the witness to point out in court or identify the person who robbed him, and (2) any identification made now in court was tainted with the alleged identification, was illegal for the two reasons above having been made on the night of the arrest of the defendant and the District Attorney must show that the first identification and the court room identification were in fact separate." *156 In this Court counsel for defendant argue:
"We respectfully submit that in this case the State of Louisiana has violated the rights of defendant, Joseph B. Richey, both under the Sixth Amendment and with reference to due process of law. In his per curiam to Bills 15 and 16, the trial judge notes that the defense injected into the case the prior identification and that the State confined itself to the identification made in Court. The answer to this, we submit, is the same answer given by the United States Supreme Court in the Wade case. The Court's words are quoted above. It held that the right to counsel would be an empty one if the rule was limited to exclusion of the out-of-court identification without regard to the admissibility of the courtroom identification. It noted that the out-of-court prior identification is most often used to crystallize the witness' identification for future reference. The Court also noted counsel's predicament in court of having to bring out himself the out-of-court identification as the only means of attack on an unequivocable courtroom identification.
"The relief granted in Wade and Gilbert was remanded for a determination of whether the in-court identification had independent source. We anticipate that the State will contend that it did this through the form of question put to Reiszner. We refer to the injunction contained in the question enjoining him to base his answer as to whether or not he could identify the robber in court `solely on your recollection of the robber as you remember him during the robbery.' We respectfully submit that framing the question thusly and receiving an affirmative answer does not constitute the kind of foundation required as indicated in the Wade and Gilbert cases.
"In any event, we submit that the due process test was not met. No lineup at all was arranged for the identification made at Reiszner's place on the night following the robbery. The accused, a negro, was presented by two white deputies to Reiszner. If the deputies did not suggest to Reiszner that the accused was the robber, as Deputy Wilmore's testimony indicates they did, Reiszner surely was influenced by the incriminatory and inculpatory statement and action of the accused. While we submit there was no probable cause for the accused's arrest, it can well be supposed that Reiszner would assume that the deputies had tangible reasons for believing the accused was the robber and had probable cause. Under all the circumstances, we respectfully submit that the in-court identification of the accused by Herbert Reiszner, following and depending upon the prior unfair identification process conducted out of court, should be invalidated by this Supreme Court and his conviction should be reversed."
These bills require a determination of the legality of an in-field identification and an in-court identification.
It is to be noted that defendant's confrontation with Mr. Reiszner occurred approximately eighteen hours after the robbery; but, the fact must be stressed that when defendant was apprehended and placed under arrest, he was immediately taken to Mr. Reiszner's store for the victim's viewing and observation. There was neither delay nor hesitation in Mr. Reiszner's identification.[5]
*157 We do not find that the case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, is apposite to the instant prosecution. The question presented in Wade was "whether court-room identifications of an accused at trial are to be excluded from evidence because the accused was exhibited to the witnesses before trial at a post-indictment lineup conducted for identification purposes without notice to and in the absence of the accused's appointed counsel." The United States Supreme Court vacated the judgment of the Court of Appeals and remanded the matter to it with directions to enter a new judgment vacating Wade's conviction and remanding the case to the district court for further proceedings. Likewise, we do not find that the case of Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, contains a guideline for decision herein. Gilbert involved a pretrial lineup conducted in the absence of counsel and incourt identifications. The matter was remanded for the purpose of affording the State of California an opportunity to establish that the in-court identifications had an independent source, or that their introduction in evidence was in any event harmless error. The Wade and Gilbert decisions were handed down by the United States Supreme Court on June 12, 1967.
Commonwealth v. Bumpus, 354 Mass. 494, 238 N.E.2d 343 (1968), a breaking and entering prosecution, involved facts somewhat similar to those herein presented. On appeal from his conviction, Bumpus contended that the trial judge erred (a) in admitting evidence concerning Greenberg's and Fallon's observation (Greenberg was a student who identified Bumpus as an intruder, and Fallon was an officer) of Bumpus immediately after his arrest; and (b) in admitting Greenberg's in-court identification of Bumpus without a voir dire to establish that the identification had a source independent of the prior confrontation (Officer Fallon brought Bumpus to Greenberg for confrontation almost immediately after the commission of the offense). In affirming the conviction, the Supreme Judicial Court of Massachusetts stated, 238 N.E.2d, at 347:
"Reasonable confrontations of this type, in the course of (or immediately following) a criminal episode, seem to us to be wholly different from post-indictment confrontations (such as those in the Wade and Gilbert cases) in serious crimes after a significant interval of time, and in the absence of already appointed counsel. The Supreme Court of the United States has not applied the principle of the Wade and Gilbert cases in such circumstances. Until we have more guidance than at present about the scope of necessary application of these cases, we shall regard them as not intended to apply to facts like those in the case at bar. This is an area where proper police protection of the public may be greatly embarrassed by rigid rules restricting intelligent, fair police action. Such action must be appraised with commonsense *158 appreciation of the problems which confront policemen patrolling a residential area. * * *"
The facts of Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969) certiorari denied May 26, 1969, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245, are similar to those herein presented. The identification by McCann, however, occurred almost immediately after the commission of the offense charged. In affirming defendant's conviction for housebreaking and petit larceny, the United States Court of Appeals, District of Columbia Circuit, said, 408 F.2d at 1284:
"Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will `if anything promote fairness, by assuring realiability * * *.' This probability, together with the desirability of expeditious release of innocent suspects, presents `substantial countervailing policy considerations' which we are reluctant to assume the Supreme Court would reject. We therefore conclude, with some hesitation, that Wade does not require exclusion of McCann's identification.
"This conclusion does not rest on a determination that McCann's identification was in fact especially reliable. It rests instead on a general rule that it is not improper for the police immediately to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before." See, note, 22 L.Ed.2d p. 924.
The case of Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104 (1968), United States Court of Appeals, District of Columbia Circuit, involved facts similar to those herein presented. Therein, Circuit Judge Burger, now Chief Justice of the United States Supreme Court, stated, 405 F.2d at 1106:
"There is no prohibition against a viewing of a suspect alone in what is called a `one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time. An early identification is not error. Of course, proof of infirmities and subjective factors, such as hysteria of a witness, can be explored on cross-examination and in argument. Prudent police work would confine these on-the-spot identifications to situations in which possible doubts as to identification needed to be resolved promptly; absence such need the conventional line-up viewing is the appropriate procedure." See, Harris v. Dees, 5 Cir., 421 F.2d 1079. Cf. United States v. Ballard, 5 Cir., 423 F.2d 127; United States v. Canty, 4 Cir., 430 F.2d 1332. Also see, State v. Lewis, 255 La. 134, 229 So.2d 726.
Under the above jurisprudence, we conclude that the in-field identification which took place herein after the robbery was legal. As stated supra, defendant was brought to Mr. Reiszner's store by the arresting officers at the earliest possible moment. We do not find that the period of time which elapsed between the robbery and the confrontation was excessively long; we do not find that confrontation was precluded by a period of some eighteen hours. Under the facts and circumstances at the time of defendant's confrontation with Mr. Reiszner, defendant suffered no violation of his constitutional rights.
Despite our finding with respect to the legality of the in-field identification, we find that Mr. Reiszner's in-court identification of the defendant was independent of and not tainted with his in-field identification. His testimony affirms the fact that the in-court identification was based solely *159 on his recollection of the man who robbed him. The facts stated supra reflect that Mr. Reiszner gave a description of the robber to many persons before defendant's apprehension and arrest. The testimony discloses his acute mental picture of the robber. The facts, supra, disclose that Mr. Reiszner's view of the robber at the time of the robbery was not momentary; the observation took place both outside and inside of the store. We conclude that the in-court identification was proper and legal. See, State v. Allen, 251 La. 237, 203 So.2d 705; State v. Singleton, 253 La. 18, 215 So.2d 838; State v. Alexander, 255 La. 941, 233 So.2d 891; State v. Pratt, 255 La. 919, 233 So.2d 883; State v. Henderson, 253 La. 981, 221 So.2d 480. Cf. State v. Junius, 257 La. 331, 242 So.2d 533.
Bills of Exceptions Nos. 15 and 16 are without merit.

BILL OF EXCEPTIONS NO. 22

(Presented without argument)
Bill of Exceptions No. 22 was reserved when the trial court overruled defense counsel's objection to the question, "What description did he give?" propounded to Deputy Wilmore by the District Attorney.
Counsel for the defendant contended that the question, supra, called for hearsay what Mr. Reiszner told Deputy Wilmore.
We agree with the following per curiam of the trial judge with respect to his ruling:
"The defense counsel objects because the witness was permitted to answer the question asked by the District Attorney as to what description of the robber he had been given. He reiterated this description. It was necessary that he reiterate this description during the trial to show that he had reasonable grounds to arrest the accused. The accused fitted this description that he had been given. Had the description been that the robber was a white man, 5' 1" tall and weighing 90 pounds and the arresting officer arrested this defendant who is the exact opposite of this description then this would have been relevant for the jury to show that the officer had no basis for arresting this accused.
"This was not hearsay. This is what information was given to the arresting officer and based upon this information this officer took certain actions. We were not concerned at this time as to whether the information was correct or not. The questions was what information was given to the arresting officer. At this time the accused was still at large.
"This bill is completely without merit because the party who gave the description testified as to what description he had given to the police officer. The accused was present in Court. The jury could take and make a comparison of the description with the accused as he appeared before them. The hearsay rule no longer applied because the person giving the description testified as to what description he had given. There was a concurrence by the person giving the description and the person receiving this description."
Bill of Exceptions No. 22 is without merit.

BILL OF EXCEPTIONS NO. 23
Bill of Exceptions No. 23 was reserved when the trial court overruled the following objection of defense counsel:
"I don't know whether this is the proper time or not Your Honor but in any event, to protect the record, I would like at this time to object to the eliciting or attempt to elicit any testimony from this witness concerning the alleged action of the accused at the arrival of Mr. Reiszner's with reference to his producing money from his pocket and the statements he made in connection he made with it on the grounds that it was made pursuant to an illegal arrest and an *160 illegal transporting of the accused from place where illegal arrest took place to Mr. Reiszner's and that he was not given proper warning of his constitutional rightsthat he was without the benefit of counsel and for that reason any actions which may have incriminated him or resultingwhich would have constituted inculpatory statements with confessions were the result of official illegality."[5a]
On May 12, 1970, after the petit jury was empaneled and sworn, counsel for the State filed Notice of Intention to Use Statements of the Defendant, which notice recited:
"It is the intention of the State of Louisiana, upon the trial of the above numbered and entitled cause, to introduce into evidence, oral statements made by the defendant, Joseph Richey, to William T. Dugan and Johnny Wilmore, Deputy Sheriffs of the Rapides Parish Sheriff's Office, at the approximate time of his arrest in Cheneyville, Louisiana on March 14, 1970; oral statements made by the defendant to William T. Dugan and Johnny Wilmore, Deputy Sheriffs of Rapides Parish, and Herbert Reiszner, Jr., at Reiszner's Store near Meeker, Louisiana shortly after his arrest; oral statements made by the defendant to Tony Van Dyke and Dale Givens, Deputy Sheriffs of Rapides Parish, Louisiana, on March 15, 1970 in the Rapides Parish Jail; oral statements made by the defendant to Walter Reynolds, Deputy Sheriff of Rapides Parish, Louisiana, on March 16 and 17th, 1970 in the Rapides Parish Jail."[6]
*161 Deputy Sheriffs Wilmore and Dugan testified during trial that when brought to Reiszner's store after arrest, defendant stated, "Here's the money, I've spent part of it. The gun is in the car." Counsel for the defendant contend that the State failed to comply with the substance of Art. 768, LSA-C.Cr.P.; they argue that the evidence testimony of Deputy Sheriffs Wilmore and Duganwas clearly inadmissible since it was not covered by the notice of intention given. Counsel submit:
"* * * No one had informed on the accused and nothing in the accused's answers to questions pointed to him or linked him with the robbery. There was really nothing distinctive about the accused's clothing or his general appearance that justified his arrest. We respectfully submit that the arrest was without probable cause, tainting everything which occurred thereafter to incriminate the accused, and the accused's rights under the Fourth Amendment were violated by the court's failure to rule the arrest was without probable cause.
"We submit that less detailed discussion is required to demonstrate that the accused's Fifth Amendment rights were violated. Deputy Wilmore testified (Tr. 359) that he gave the accused a `Miranda' warning. The testimony of all three parties established that the warning was not given until after the accused made his statement and Reiszner had identified him. No warning was given to the accused when he was first questioned and at the time he was arrested. Jurisprudence covering this violation is set forth in the following jurisprudence. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081; Escobedo v. United States, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
"The violation of the accused's Sixth Amendment right to have counsel present has already been discussed under Bills 15 and 16 in connection with the identification of the accused. That discussion is equally applicable, we respectfully submit, to the statement of the accused given at Reiszner's store on the night after the robbery."
Initially, we find that defendant's arrest was legal and was made with probable cause; no warrant of arrest was required under the existing facts and circumstances. LSA-C.Cr.P. Art. 213. The facts, supra, disclose that Deputy Wilmore was given a complete description of the robbery and the robber by Mrs. Reiszner shortly after the incident occurred; that he was given a second description at the scene of the automobile accident, supra; and that he was given still a third description by Mr. Reiszner himself. Wilmore knew the physical build, shape, and size of the man for whom he was searching. When he saw the defendant for the second time in Cheneyville and questioned him as to his reason for being in Cheneyville, Officer Wilmore then determined, as we think a reasonable and prudent man of average caution would have done under the circumstances, that defendant was suspect. Wilmore and Dugan were armed with sufficient information to make an arrest of defendant; and, as we have stated a number of times, supra, he was placed under arrest and seated in the back seat of the car for the drive to Reiszner's store but was neither restrained nor handcuffed. *162 See, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; State v. Thompson, 256 La. 1019, 240 So.2d 899; State v. Royal, 255 La. 651, 232 So.2d 465; State v. Pebworth, 251 La. 1063, 208 So.2d 530; State v. McQueen, 257 La. 684, 243 So.2d 798; Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484.
We find that the oral statement, supra, made by defendant at Reiszner's store was not a fruit of custodial interrogation. Although inculpatory, it was spontaneous and voluntary and made without solicitation. At the time the statement was made, defendant needed neither a Miranda warning nor the assistance of counsel. We find no violations of defendant's constitutional rights by the admission of the inculpatory statement in evidence. We find that the Notice of Intention to Use Statements of the Defendant, supra, complied with Art. 768, LSA-C.Cr.P., supra. The State was under no duty to give defense counsel more detailed information than that supplied. State v. Square, 257 La. 743, 244 So.2d 200.
Bill of Exceptions No. 23 is without merit.

BILLS OF EXCEPTIONS NOS. 14, 17, 18, 19, 20, 21, 24 AND 25
Bill of Exceptions No. 14 was reserved to the overruling of defense counsel's objection to the State's offering in evidence State Exhibit No. 3, a sweater.
Bill of Exceptions No. 17 was reserved to the overruling of defense counsel's objection to the State's offering in evidence a 22 caliber pistol and bullets found in the wrecked car, supra.
Bill of Exceptions No. 18 was reserved to the overruling of defense counsel's objection to the State's offering in evidence its Exhibit No. 8, a fingerprint lifted from the cigarette lighter of the wrecked automobile, supra.
Bill of Exceptions No. 19 was reserved to the overruling of defense counsel's objection to the State's offering in evidence a bullet found in the wrecked automobile, supra.
Bill of Exceptions No. 20 was reserved to the overruling of defense counsel's objection to the State's offering in evidence Exhibit No. 10, a fingerprint card.
Bill of Exceptions No. 21 was reserved to the overruling of defense counsel's objection to the State's offering in evidence Exhibits Nos. 2 and 3, sweater and pants.
Bill of Exceptions No. 24 was reserved to the overruling of defense counsel's objection to the State's offering in evidence a 22 caliber pistol found on the person of the defendant.
Bill of Exceptions No. 25 was reserved to the overruling of defense counsel's objection to the State's offering in evidence a pocket comb, $39.00, and five cartridges items found on the person of the defendant when he was searched at the Rapides Parish Jail.
Defense counsel contend that the introduction of the above evidence was objected to because defendant's arrest was made without probable cause. They further contend that the above items were taken as the result of an unconstitutional search and seizure.
In Bill of Exceptions No. 23, supra, we found that defendant was arrested with probable cause. No further discussion of the instant bills is necessary. The authorities cited under Bill of Exceptions No. 23 support a finding that a search and seizure following a valid arrest is not unconstitutional.
Bills of Exceptions Nos. 14, 17, 18, 19, 20, 21, 24 and 25 are without merit.

BILL OF EXCEPTIONS NO. 26
Bill of Exceptions No. 26 was reserved when the trial court overruled defense counsel's objection to the qualification of Lt. James H. Mitchell as a fingerprint identification expert.
*163 Defense counsel submit that their objections to Lt. Mitchell's testimony on the ground of lack of qualification as a fingerprint expert were good, and that the trial court was manifestly in error in qualifying him.
In his per curiam to the instant bill of exceptions, the trial judge states, "The Court heard his qualifications in addition to hearing the testimony that he gave subsequent to his qualifications and can state that this officer was eminently qualified to give expert opinion."
The competency of an expert is a question of fact; the trial judge has a wide discretion in passing on qualifications of such a witness. State v. Alexander, 252 La. 564, 211 So.2d 650; State v. Fink, 255 La. 385, 231 So.2d 360.
We do not find that the trial judge abused his discretion in qualifying Lt. Mitchell as a fingerprint expert. He committed no reversible error.
Bill of Exceptions No. 26 is without merit.

BILL OF EXCEPTIONS NO. 27
Bill of Exceptions No. 27 was reserved when the trial judge refused defense counsel's request for the following special charges to be given to the jury:

"SPECIAL CHARGE NO. 1

"IDENTIFICATION
"The Court instructs the jury that, in determining whether or not the defendant has been identified as the person who committed the offense charged against him, if any such offense was committed, you must consider all of the testimony in the case, both that for the prosecution and that for the defendant, considering the means of identification; the circumstances under which he was identified, the opportunity for identifying the said defendant; the influence brought to bear on person claiming to identify the defendant; the description of his apparel as stated by the witness, and the probabilities or improbabilities that he was the defendant, and if after so judging and weighing the evidence, you are not satisfied beyond all reasonable doubt that the defendant has been correctly identified as the person who committed the offense charged in this indictment, it will be your duty to find the defendant not guilty."

"SPECIAL CHARGE NO. 2

"PRESUMPTION OF INNOCENCE
"The Court instructs the jury that, in determining whether or not the defendant is guilty of the alleged crime, he must be presumed innocent until proven guilty beyond a reasonable doubt; you must give the defendant the benefit of the presumption of innocence without any mental reservations whatsoever; you are to consider the presumption of innocence as actual proof of innocence until it is overcome by proof of guilty beyond a reasonable doubt; that you are to give the defendant the full benefit of that presumption of innocence."

"SPECIAL CHARGE NO. 3

"REASONABLE DOUBT
"The Court instructs that the jury, in determining whether or not the defendant is guilty of alleged crime, all the elements of the crime charged must be proven beyond a reasonable doubt, and that if one element is not doubt, your verdict must be not guilty; that if the prosecution fails to prove the guilt of the accused with that degree of moral certainty that amounts to proof beyond a reasonable doubt, then your verdict must be not guilty; that the burden of proving the defendant guilty beyond a reasonable doubt rests with the prosecution and that the accused need not introduce any evidence whatsoever."

"SPECIAL CHARGE NO. 4

"THE JURY IS THE SOLE JUDGE OF THE FACTS
"The Court instructs the jury, that in determining whether or not the defendant *164 is guilty of the alleged crime, that the jury is the sole and exclusive judge of the facts; that the jury judges this case solely on the evidence before them and is not to allow the fear of later criticism to affect the verdict; that the jury is to give the accused the benefit of its individual judgment in arriving at a verdict in this case; that the jury is bound to reach a verdict solely on the evidence introduced during the trial."
We agree with the following per curiam of the trial judge which expresses his reasons for not giving the special charges:
"The first special charge requested was what was labeled `Identification.' The Court refused to give this for several reasons. First the jury was charged that it is the burden of the State to prove every element of the crime beyond a reasonable doubt. Identification of the accused as the perpetrator of the crime was one of the elements of proof required. This was not the only element of proof involved in the case. There were many issues that the State had to resolve against the defendant by proof beyond a reasonable doubt. It would have been improper to have given an instruction on identification as this would have pinpointed this issue out of proportion to the other issues in the case. The law that the Court gave the jury was applicable to all issues in the case. The instruction that was requested comes very close to the Court commenting on the evidence. For the Court to have given this so-called charge to the jury would in the opinion of the writer, have planted in the minds of the jury that the Court had some doubt regarding the man's identification.
"With regard to special charge number 2 on presumption of innocence the Court gave the jury a charge on presumption of innocence in its general charge.
"Special charge number 3 requested a charge on reasonable doubt. The Court gave a charge on reasonable doubt and one that was understandable. In the one requested the second half of the third line is not intelligent.
"The requested charge instructing the jury that it was the sole judges of the facts was not given because such charge was covered in the general charge given by the Court." See, LSA-C.Cr.P. Art. 807.
Bill of Exceptions No. 27 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs in the result; having some reservation as to the correctness of the articulation of reasons disposing of Bills of Exceptions Nos. 12 and 27.
DIXON, Justice (concurring).
I concur. However, our ruling on Bill of Exceptions No. 27 should be further explained.
Requested charges 2, 3 and 4 in Bill of Exceptions No. 27 are, as noted in the per curiam, contained in the trial judge's charge to the jury. The charge as given by the trial judge adequately instructed the jury as to the meaning of "reasonable doubt."
When read as a whole, the trial judge's charge covered the defendant's requested charge number 1. Specifically, the jury was instructed that if they found "the evidence unsatisfactory on any single point indispensably necessary to constitute the defendant's guilt," such would be sufficient grounds for reasonable doubt to find the defendant not guilty. It was up to the jury to believe or disbelieve the witnesses' testimony as to the identification of the defendant. Although the trial court probably should have instructed the jury as requested by the defendant pursuant to C.Cr.P. article 807, since the charge requested was not incorrect, the matters contained in the requested *165 charge number 1 are implicit in the charge as given.
BARHAM, Justice, (dissenting).
I respectfully dissent from the majority's determination that there was no merit in Bills of Exception Nos. 3, 7, 8, 9, and 11.
Counsel for defendant attempted to inquire of several jurors whether they could accept and apply a rule of law which is little understood by laymen and which even the best of judges have difficulty in applying in all cases. The legal presumption of innocence which is supposed to clothe a defendant is very often given only lip service. It is most difficult for many, and impossible for some, prospective jurors to accord this presumption to an accused. The accused often stands before the bench under indictment. The very first thing heard by the empaneled jurors is the ominous intoning of the indictment, which contains the following or similar language: "The Grand jurors * * *, good and lawful men * * *, acting in the name and by the authority of the State of Louisiana, on their oath present" that the accused acted "in contempt of the authority of the State of Louisiana, and against the peace and dignity of the same". The bill of information merely substitutes the district attorney as that awesome authority who has presented the accused as being in contempt of the authority of the State. The wording of the indictments may vary in the different parishes, but the substance and the overtones of every indictment make it very difficult for anyone, especially a lay person, to thereafter truly cloak an accused with a presumption of innocence. Moreover, arrest and detention are so foreign and abhorrent to some jurors that a presumption of wrongdoing and guilt attaches from that mere fact alone. Prospective jurors sometimes have strong predilections that police officers are able to determine the guilt of an accused, and therefore to such jurors any affidavits or presentments by these officers against the accused carry a presumption of guilt.
I would agree that it is the court's obligation to instruct as to the law, but I believe it very necessary that both the State and the defendant be accorded the opportunity of inquiring of a juror whether certain laws can be accepted by him. For example, the State inquires (and must do so with great caution and care) in a capital case whether a juror can apply the law which requires a penalty of death if an unqualified verdict is returned. Certain faiths and creeds adhered to by people in this country would make it impossible in many cases for them to servesometimes from the State's point of view, sometimes from the defendant'sand fairly discharge their duty to apply all laws charged by the court.
We have held repeatedly, and it is a common practice in the trial court, that the State has a right to inquire on voir dire examination whether a prospective juror will convict on circumstantial evidence. More than that, we have held that an answer from a juror that he could not convict on circumstantial evidence is a ground for challenge for cause. State v. Frier, 45 La.Ann. 1434, 14 So. 296; State v. Barker, 46 La.Ann. 798, 15 So. 98; State v. Stephens, 116 La. 36, 40 So. 523. I respectfully suggest that it is at least equally important to determine whether a prospective juror will accord the defendant the presumption of innocence, will require the State to prove every ingredient of the crime, will not require the defendant to make any proof, and will not carry any presumption of guilt into the case because of arrest or indictment.
Voir dire examination serves the purpose of searching the mind of the juror and determining whether he can be fair and impartial in a criminal prosecution to both the State and the defense. It may be carried on in a manner which is not unduly burdensome to those attending the court, especially when that burden is balanced with the rights which are sought to be protected in that proceedingthe rights of the accused and the rights of the State. Subject to review *166 for abuse of discretion, the examination is regulated by the trial judge, and repetition and irrelevancies should be controlled.
I believe it to be an abuse of discretion of the trial judge to instruct counsel for defendant, or in another case it may be counsel for the State, that he cannot inquire of certain prospective jurors whether they can apply what may appear to some to be an unacceptable principle of law. I am of the opinion that the questions in this case which were designed to establish whether a prospective juror could truly accept and apply a difficult standard of law were good and even necessary voir dire examination. While men of the bench and bar are trained to accept the legislative will and apply it even when they believe it to express bad law, if we but search deeply we find how difficult it is to discharge our duties when confronted with what we believe to be bad law. Laymen are filled with prepossessions and predilections concerning certain laws, and a confusion or misunderstanding in the mind of a juror concerning certain facets of the law is dispelled only with great difficulty. The voir dire examination serves the vital purpose of searching for bias for prejudice and predilections. It may serve the purpose of cleansing the juror's mind of those erroneous beliefs which are not too strongly implanted. It offers the court the opportunity to excuse for cause those who cannot apply the law, and it offers to the State and the defense the opportunity of excusing peremptorily those jurors who they doubt can put aside certain deepseated bias or prejudices.
I well understand the trial court's desire to conserve time in voir dire examination, but conservation of time is not always expeditious justice. Even under the pressure of the need for making more court time available for all litigants, the court cannot deprive the litigants before it of valuable rights. If an accused is to be accorded a jury trial, it certainly is most essential that he be accorded a fair and impartial jury. This can only be determined through some method of interrogation to seek for the bias and prejudice which would make a juror incompetent. Federal courts in an effort to conserve time have adopted in general a practice of interrogation by the judge, with the right reserved in counsel to submit pertinent additional interrogatories. Nevertheless these judges have apparently assumed that a juror's state of mind in regard to presumption of innocence and attendant matters is proper voir dire examination.
Our own trial courts, including the one in this case, have apparently with little if any deviation believed a voir dire examination such as is here in question to be proper. Even our Supreme Court has recognized the need for pre-empaneling discovery of bias and prejudice of jurors concerning the legal principles that the defendant is presumed innocent, that an indictment carries no weight as to guilt, and that the State must prove every element of the offense beyond a reasonable doubt. See State v. Perioux, 107 La. 601, 31 So. 1016; State v. Morgan, 147 La. 205, 84 So. 589; State v. Newton, 241 La. 261, 128 So.2d 651. Our sister state of Alabama follows the federal practice and apparently also believes the interrogation on this basic concept to be a valid part of voir dire examination. Aaron v. State, 273 Ala. 337, 139 So.2d 309.
While I do not advocate lengthy voir dire examination, I am compelled to believe that the questions which were tendered the prospective jurors here were so pertinent, so valid, and so valuable on voir dire examination that it was reversible error for the trial court to refuse the questions.
I question seriously the majority's determination under Bill of Exception No. 12 that argument and proof concerning the theft of an automobile were proper. That crime was not at issue, nor was evidence of such an offense admissible for any other purpose.
I respectfully dissent.
NOTES
[1] The prayer of the Motion to Suppress Evidence and Identification recites:

"That after due proceedings had, and hearing upon this Motion, this Court accord to mover his rights, privileges and immunities as set forth hereinabove and as provided by the Constitutional and statutory provisions enumerated hereinabove, and that this Honorable Court exclude and suppress from the evidence upon the trial of this case, any and all physical and testimonial evidence of every kind, nature and description obtained, extracted or secured from defendant by any law enforcement officer, including the District Attorney or his representative of Rapides Parish, Louisiana, which was obtained from defendant or from defendant's residence at any time after his alleged arrest.
"That after due proceedings had, and hearing upon this motion, this Court accord to mover his rights, privileges and immunities as set forth hereinabove and as provided by the constitutional and statutory provisions enumerated hereinabove, and that this Honorable Court exclude and suppress from the evidence upon the trial of this case any and all testimony regarding the identification of the defendant of any kind, nature and description which was obtained by having the defendant identified without benefit of a line-up or counsel after his alleged arrest."
[2] LSA-R.S. 15:357, a source of LSA-C.Cr.P. Art. 786, recited, "The purpose of the examination of jurors is to ascertain the qualifications of the juror in the trial of the case in which he has been tendered, and the examination shall be limited to that purpose."

In State v. Andrus, 250 La. 765, 199 So.2d 867, 877 (1967), we said: "We are convinced just from reading the questions that the trial judge properly sustained the State's objections to them. Under former R.S. 15:357 the purpose of examination of jurors on their voir dire is to ascertain their qualifications in the trial of the case, and the examination shall be limited to that purpose. The questions counsel desired to ask have no bearing upon the qualifications of the jurors to serve in this case. Moreover, as this court has said many times, the trial judge has a wide discretion in restricting voir dire examinations, and his rulings in this respect will not be disturbed except in cases of clear abuse. State v. Williams, 230 La. 1059, 89 So. 2d 898, and cases cited. * * *"
[3] In Schoonover, we held that the trial judge did not abuse his discretion by permitting the State to question prospective jurors with respect to conspiracy.
[4] "The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge." LSA-C.Cr.P. Art. 766.
[5] Mr. Reiszner testified:

"Q. Now, when you came outside your house, that's where you saw the defendant, is that not correct? At 12:30 at night?
"A. Yes, yes, sir he was in the car.
"Q. Did somebody knock on your door and ask you to come out or?
"A. Yes, sir.
"Q. All right. Now when you got outside your house was the defendant outside the automobile or was he still inside?
"A. He was in the car.
"Q. All right. And you had one of the deputies order him to get out, is that correct?
"A. Yes, sir.
"Q. And he did get out?
"A. And he asked me to come around to the other side of the car. The deputy asked me.
"Q. That's right and at the front of your store there, there are no street lights or anything like that?
"A. AhI have a sign, a lighted sign.
"* * *
"Q. Then, it was nighttime, twelve-thirty and the defendant was asked to get out of the car and you came up to him, is that correct?
"A. That's right.
"Q. Isn't it true that one of the deputies then shined a flash-light in his face?
"A. Yes, sir.
"Q. All right then when that happened, you said that looks like him? Isn't that what you said?
"A. Ahyes, sir.
"Q. After that happened, sir, is it not a fact that you then heard one of these deputies then start giving this man the warning about he could have a lawyer if he needed one, he didn't have to make a statement, if he did make a statement it could be used against him in a court of law?
"A. He read all that to him."
[5a] After the above objection was overruled and a bill of exceptions was reserved, the following testimony was adduced from Deputy Wilmore:

"Q. Deputy Wilmore I believe when we had this interruption that you were testifying that Mr. Reiszner had come out from his store, gone to the left side of the automobile and then was coming back around to the right side of the automobile and that's aboutand I also believe you said something to the effect that the defendant did something at that point, is that true?
"A. Yes, sir.
"Q. Now before we go into what he said, I want to ask you you related earlier to the jury the conversation that you had with the defendant at the time of his arrest.
"A. Right sir.
"Q. Did you have any other conversation with him at the time of arrest or between the time he was arrested and the time you got him to Reiszner's store?
"A. No sir.
"Q. Did you ask him any questions during that time?
"A. No, sir. No sir.
"Q. Make any threats?
"A. No sir.
"Q. Did you in any way attempt to elicit the statement that you [are] about to testify to from the defendant?
"A. No sir.
"Q. What did the defendant say?
"A. The defendant reached in his pocket, pulled out the money and said here is the money, I've spent part of it. The gun is in the car.
"Q. What did you do then?
"A. I told him, no, I didn't want it, put it in his pocket. I then advised him of his rights.
"* * *
"Q. Did you interrogate the defendant at any time from the time you leftat any time from the time you arrested him until you got to the court house?
"A. No sir."
Deputy Dugan testified:
"Q. Was the man arrested?
"A. He was arrested on that time of probable cause of armed robbery."
Deputy Dugan then testified that the defendant was placed in the car, neither restrained nor handcuffed. His testimony with respect to events at Reiszner's store is as follows:
"Q. Then what happened?
"A. When we got right around the front, as I remember, that he was getting out, I was watching when he opened the door, he had something in his hand, I say it was the money and then he told Officer Wilmore, said `here's the money, I spent part of it and I left the gun in the car.'"
[6] Art. 768, LSA-C.Cr.P., provides:

"If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence."
One of the Official Revision Comments under Art. 769 states:
"* * * Arts. 767 and 768 are an entirely new approach to the problem of reference to a confession in an opening statement. The defendant cannot properly prepare to meet the issue unless he is apprised that the state intends to use the confession. However, there can be no doubt that any mention of a confession to the jury has some prejudicial effect. Arts. 767 and 768 solve both problems by requiring that the defendant be advised of the state's intention and by prohibiting any reference to a confession before a jury until it is actually introduced."