DIXON, Justice.
Billy Ray Dillard was found guilty of the murder of Anna Tatman after a verdict of the jury, and sentenced to death. He advances arguments under five headings in which he contends the trial judge erred.
We affirm.
I
Defendant’s first specification of error is based on the admissibility of statements made to police officers by the accused on May 19 and May 23, 1970.
Before dawn on Sunday morning, May 17, 1970, Anna Tatman was bound and mortally wounded, and her house was burned with her inside. ...
In the same town, on the night of May-16, there was a violent racial disturbance following a run-off election.
Deputy C. S. Denny had been looking for the defendant to question him concerning the arson and murder of Miss Tatman. The defendant had previously pleaded guilty to attempted burglary of the' same house in which Miss Tatman resided. Deputy Denny also knew of previous violent criminal conduct of the defendant. He had asked others to assist him in locating the defendant.
The defendant was “picked up” on Tuesday, May 19 at 7:40 a. m. He testified that he had heard that the deputies wanted him, and was on his way to see what they wanted when a town policeman picked him up and carried him to jail.
The defendant remained in jail from about 8:00 a. m. until after 4:00 p. m. when Deputy Denny was able to give him his attention. At about 4:50 p. m., in the presence of several other persons, the defendant signed a waiver of his rights; a statement was taken from the defendant in longhand, typed up, presented to him and he signed it.
There is no credible evidence that this statement was not free and voluntary. The defendant denied making the statement of the 19th, claiming he signed a written statement prepared for him under threats.
*710 The evidence is overwhelming against the defendant’s contention. He was offered counsel on May 19 and was later afforded counsel when it appeared that he might be charged with the crime. He never complained to his counsel that he was threatened or abused. His first statement tended to be exculpatory, naming other men who were arrested and accused of the crime.
The following Saturday, May 23, the district attorney learned that the defendant desired to change his story, and to make another statement. Upon the request of the district attorney, the district judge appointed a lawyer to represent the defendant (who had been charged as a material witness because of the things he said he had seen in the statement he gave on May 19).
Defendant’s statement of May 23 was lengthy. It was recorded on magnetic tape. Defendant’s lawyer was present. The defendant was thoroughly informed of his rights, and was repeatedly told that it was not necessary for him to say anything.
Defendant now argues that his arrest was illegal, that the statement of May 19, obtained because of the illegal arrest, is inadmissible, and that the subsequent inculpatory statement of May 23 was so “poisoned” by the illegal arrest that it was also inadmissible, citing Wong Sun v. United States, 371 U.S. 471/83 S.Ct. 407, 9 L.Ed.2d 441; Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676; United States ex rel. Gockley v. Myers, 3 Cir., 450 F.2d 232; United States v. Burhannon, 7 Cir., 388 F.2d 961.
We find defendant’s arrest was legal. Deputy Denny had reasonable cause to believe that defendant had committed the crimes under investigation. He knew of defendant’s attempted burglary of Anna Tatman’s residence in September of 1968. The police investigation of the May 17 crime disclosed similarities in method of entry into the Tatman house which connected the two offenses. The same screen had been removed from the same.window; the same window had been pried or tampered with; the same telephone lines had been cut or severed. Defendant had previously been involved in the battery of a woman. These factors created more than suspicion. Considering the sparse population of the area and the relatively small number of persons with access to the victim, they provided the reasonable cause for defendant’s arrest.
Even if the arrest had been illegal, the taint was dissipated before the first statement was given May 19. Defendant was warned of his rights, and the statement (in which he accused other persons and attempted to exculpate himself) was free and voluntary. The arrest itself, even if illegal, was not the cause of the statement. By the defendant’s own testimony, he was *712 voluntarily on his way to see Deputy Denny when the town policeman picked' him up. As a result of the statement, defendant was charged, not with murder, but as a material witness. Nor was any improper influence exerted on defendant to make a further statement. On May 23 he was advised of his rights, not only by deputies hut by an experienced lawyer and by the district attorney.
There is no merit to defendant’s arguments against the admissibility of the statements.
The defendant further argues that the May 23 inculpatory statement was wrongly admitted because the defendant had requested counsel during the interrogation and was not given “effective” counsel.
The record reflects that the defendant denied that he requested counsel for the May 23 statement. He was at that time charged as a material witness, having claimed that he saw other persons, whom he named, commit the crimes against Miss Tatman. It was out of an abundance of caution, that the district attorney requested the district judge to appoint a lawyer to represent him on this occasion. The district judge appointed Mr. Wyly; the only other available lawyer in the parish had recently completed an arduous appointment in a criminal case. Defendant’s present lawyer takes the position that “effective” counsel was denied to the defendant because Mr. Wyly, although fully informing the accused of all his rights, and staying with him during the recording of the statement, “acted more as a knowledgeable neutral party brought in to assist in the conducts» of the proceedings.”
 There is no substance to this argument. Defendant was fully and carefully advised. There is no duty on a lawyer to prevent a voluntary confession. Mr. Wyly was subsequently appointed as one of two lawyers to represent the accused after he was charged with murder and arson. There can be no criticism of the defense the accused received from his two appointed counsel.
II
Defendant’s second claim of error is that Negroes had been “systematically excluded” from the jury venires. By agreement, evidence taken in another case (State v. Grey, 257 La. 1070, 245 So.2d 178) about the composition of the same jury venires was introduced in the instant case. There is no reason for use to change our conclusion that no racial discrimination was shown in the creation of the jury venires. There is no merit to defendant’s second claim of error.
III
Defendant’s third complaint of error is based on the denial of his motion *714 for a change of venue. Counsel argues that the crime was brutal; that it was committed during a period of racial unrest; that news of the crime was widely disseminated; that a taped confession was played before a packed courtroom at a preliminary examination; and that numerous prospective jurors had a fixed opinion about defendant’s guilt.
Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, is cited to support defendant’s arguments. There is no similarity between the Sheppard case and this case.
Lake Providence is a small northeast Louisiana town in a parish with a population of about seven thousand blacks and five thousand whites. There are two weekly newspapers with a circulation of about fifteen hundred each. Saturday, May 16, 1970 was election day, with close contests between black and white candidates for local offices. After the results of the election were obtained on Saturday night, a mob of about two hundred to four hundred blacks rioted. Mob activity was contained to a small area in the town, and police reinforcements arrived Sunday.
The murder and arson occurred in the early morning of Sunday, May 17. The defendant was never identified as having participated in the riot.
The newspaper published May 22 carried the story of the mob in the lead column and the story of the murder and arson in a middle column of the front page. The defendant was not mentioned. The murder story identified three other youths as' having been charged with the murder.
Four witnesses testified on the motion for a change of venue. An assistant town marshal, when asked if he believed the defendant could get a fair trial, said: “I don’t know. I don’t know how these people feel about it.” He had not heard the matter discussed.
The sheriff of the parish had not heard enough discussion to form an opinion about whether the defendant could receive a fair trial. He knew of no condition in the parish that would prevent a fair trial.
The publisher of one of the local weeklies was of the opinion that the defendant could get a fair trial in Lake Providence, and would be “better off” there than elsewhere. The other newspaper person who testified knew of no reason why the defendant could not get a fair trial, but had not discussed it with anyone.
We agree with the trial judge’s conclusion on the motion for change of venue that the defendant could obtain a fair and impartial trial in East Carroll Parish. The record before us establishes that the defendant did receive a fair trial.
IV
Defendant complains that the trial judge erred in allowing the State to ex- *716 elude Negroes from the petit jury by using peremptory challenges. This complaint presents nothing for review.
There is no limitation upon the exercise of peremptory challenges except limitation of time and number. Peremptory challenges are part of the jury system designed not only to secure qualified jurors, but to assure, as much as possible, that among those qualified there will be none offensive to either side, for whatever reason. See State v. Richey, 258 La. 1094, 249 So.2d 143.
V
Finally, defendant complains the trial court erred in admitting evidence of a prior conviction. On September 8, 1968 defendant pleaded guilty to attempted burglary of the house occupied by Miss Anna Tat-man — the same house where her body was burned on May 17, 1970. The officer who investigated that complaint testified that in 1968 he found the screen removed from the bedroom window, pry marks about the •window, and the telephone wires cut. Miss Tatman described the defendant and identified him after an arrest.
The same officer found, on the morning of May 17, 1970, that the same screen had been removed from the same window, the same window had been tampered with, and the telephone wires separated.
Generally, evidence of other offenses is not admissible. The commission of other similar offenses is material and admissible, however, to show continuity in a system, or to show guilty knowledge and intent. R.S. 15:446. The real reason for the admissibility of evidence such as that offered here is that it has great probative value. It tends to show not merely that the defendant is a bad person, but that the defendant is identified as the perpetrator of the offense charged because of the similarity of method he employed on another occasion. The evidence is relevant and material, and its probative value outweighs the unduly prejudicial characteristic inherent in proof that the defendant had committed other crimes. The evidence before us shows modus operandi, and for that reason is admissible. State v. Spencer, 257 La. 672, 243 So.2d 793.
We note with approval that the State informed defense counsel in a bill of particulars that it intended to introduce evidence of the guilty, plea in the 1968 burglary of the decedent’s residence. There was no error in the admission of this prior conviction.
The conviction and sentence are affirmed.